## W. M. STRINGFELLOW V. C. V. SORRELLS.

### No. 3038.

1. **Increase of Live Stock.** — As applied to live stock belonging to the wife's separate property, *the increase* of such property has been invariably recognized by our courts to denote the progeny of the original stock or their descendants.

2. **Increase of Value in Growth or Weight.**—In an attempt to subject to the community debts the increased value of two mules that were owned by the wife and were colts at the marriage, and which had by age and growth greatly increased in value under the care and food furnished them after their owner's marriage, *held*, that the mules were the same and their increase in value did not change their status as the wife's.

APPEAL from Morris. Tried below before Hon. JOHN L. SHEP-PARD.

The opinion states the case.

*Talbot & Turner* and *J. T. Jones*, for appellant:—1. No property acquired during coverture is separate property except that acquired by gift, devise, or descent, and the increase on lands. Rev. Stats., arts. 2851, 2852; Braden v. Gose, 57 Texas, 37; Cleveland v. Cole, 65 Texas, 402; Epperson v. Jones, 65 Texas, 425.

2. All property acquired during coverture shall be community property, and subject to the husband's debts, except that acquired by gift, devise, or descent, and the increase on lands.

No brief for appellee reached the Reporter.

MARR, JUDGE, *Section A.*—Before and at the time of her marriage to W. J. Sorrells, in the year 1884, the appellee, Mrs. C. V. Sorrells, owned in her own right, together with other separate property, two mules. These animals were then colts and worth $35 each, and a portion of their present value as a result of their growth and avoirdupois, augmented as the years rolled on, is the subject of this controversy. The appellant in the year 1888 held a just debt, merged into a valid judgment, for a small sum against the husband of the appellee, and in satisfaction of which he caused a writ of execution to be levied upon these mules of the wife during that year. At the time of the levy the animals were grown and each of them worth in the market $75, instead of $35 as originally. The husband had managed and cared for the mules since the marriage, and the community estate furnished the provender for the animals during the intermediate time. The appellee replevied the property and duly made her claim thereto under the statute "to try the rights of property." The case came up to the District Court from a Justice Court, and the former court rendered a judgment in favor of the wife.

The appellant insists that the enhanced value of the mules which has resulted from the attention of the husband and the food furnished by the community since the marriage amounts to $80, and is an *increase* of the separate estate of the wife, and consequently is community property and liable to his execution. There is a modicum of plausibility in his contention, based upon the construction given by the Supreme Court to "the increase of the lands" of the wife; but these decisions were inspired by the necessity of protecting, not of destroying, her estate. Deblane v. Lynch, 23 Texas, 25; Forbes v. Dunham, 24 Texas, 611; White v. Lynch, 26 Texas, 195; Cleveland v. Cole, 65 Texas, 402; Epperson v. Jones, 65 Texas, 425; Braden v. Gose, 57 Texas, 37; Carr v. Tucker, 42 Texas, 336.

The Supreme Court has often decided what is *not* "the increase of the wife's lands," but so far as we are aware have not decided what *is*, and we are not required to do so now. The rule contended for would be most impracticable in application. The equitable criterion, if any were admissible in cases like the present, should be the expenses to the husband or the community, regarded as an investment, of rearing the mules, not the increased value, which may be due to other causes, subject to be offset by the value of their use, if anything. This would lead to "confusion worse confounded." As applied to live stock belonging to the wife, "the *increase*" of such property (ever since the decision of the Supreme Court in Howard v. York, 20 Texas, 670) has been invariably recognized in the reported cases to denote the progeny of the original stock or their descendants. This construction comports with the etymology of the term and accords with the universal understanding. Deblane v. Lynch, supra. The record, therefore, develops no "increase" of these particular mules in the sense that would add to or constitute a part of the community estate. They are still the same animals which the wife owned at the time of her marriage, and, mule like, they have stubbornly refused "to bring forth after their kind."

The sex of these particular mules and their capacity for reproduction, if any, is not disclosed by the record, but the general rule founded on common knowledge, with possibly some sporadic exceptions, must be recognized, that mules do not "increase, multiply, and replenish the earth" according to the ordinary laws of procreation and the genesial command. It would seem, therefore, that there can be no "increase" of the wife's separate estate if composed solely of specific mules at the time of her marriage. In cases of other live stock, his interest, recognized by law, in the offsprings thereof, compensates the husband and the community, but the erratic mule standeth apart, "like patience on a monument, smiling at grief." It would tend to entirely destroy the corpus of the wife's estate, consisting of live personal property, to declare that an augmentation in weight or value should be deemed an "increase" of the property itself so as to constitute a part

of the community to that extent.   Suppose it should decline under the ministrations of the husband—what then would compensate the wife? Fortunately she does not hold her separate property by so precarious a tenure as to depend upon the fluctuations of weight or the prices in the market.   If she did, then the alert creditor would only need to abide his time in confidence of ultimately seizing, upon a ruthless execution, the flock, the drove, and feathered tribe of the wife.   The law too closely guards, "with flaming sword and cherubim," the sacred rights of the good housewife in her own "separate property," to admit of such grave consequences.

We need only to add that the use of the mules and the products of their labor may be supposed to compensate the community for the provender consumed, and the husband would scarcely demand any. recompense for the felicity of teaching them how "to work in the traces."

We conclude that the judgment of the District Court is a most righteous one, and ought to be affirmed.

*Affirmed.*