Virginia EGGEMEYER, Petitioner,

v.

Homer Joseph EGGEMEYER,
Respondent.

No. B–6019.

Supreme Court of Texas.

May 18, 1977.

Rehearing Denied July 13, 1977.

Dissenting Opinion on Denial of
Rehearing July 13, 1977.

Bradley C. Miles, San Angelo, for petitioner.

Marvin C. Hanz, San Angelo, for respondent.

POPE, Justice.

The question presented by this appeal is whether a trial court may in a divorce decree divest one spouse of his separate realty and transfer title to the other spouse. The court of civil appeals in reversing the judgment of the trial court has ruled that section 3.63 of the Family Code does not authorize such a divestiture of one's title to separate property. 535 S.W.2d 425. We affirm that judgment. This court has jurisdiction because the holding of the court of civil appeals conflicts with the holding in *Wilkerson v. Wilkerson,* 515 S.W.2d 52 (Tex. Civ.App.1974, no writ).

The trial court granted Virginia Eggemeyer a divorce from Homer Eggemeyer and named her managing conservator of their four minor children. The trial court also awarded Virginia all of the community interest in the small family farm. Homer owned as his separate property an undivided one-third interest in the farm by reason of a gift from his mother. The trial court divested him of that interest and transferred his title to Virginia. The farm was already subject to a 20,101.80 dollar debt owing the Federal Land Bank of Houston as well as a second lien in the amount of 5,200 dollars. In divesting title from Homer, the court created and imposed still another lien against the property in the sum of 10,000 dollars which was ordered payable to Homer by Virginia on July 16, 1982, the date when the youngest of the four children reaches age eighteen. The trial court ordered Homer to pay one hundred dollars per child per month until each reaches eighteen. The court of civil appeals in reversing the divestiture of title followed the well-reasoned decision of *Ramirez v. Ramirez,* 524 S.W.2d 767 (Tex.Civ.App.1975, no writ), and several previous decisions by this court.

It has long been the law that upon divorce the rents, revenues, and income from a spouse's separate property may be set aside for the support of the minor children. In support of that principle, the court of civil appeals properly cited *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W. 21 (1923); *Rice v. Rice,* 21 Tex. 58 (1858); *Fitts v. Fitts,* 14 Tex. 443 (1855), and section 14.-05(a) of the Texas Family Code. The trial court could have but did not set over the father's separate interest in the farm to the mother for the support of the children during their minority. The court of civil appeals did remand the cause to the trial court to consider such an arrangement. That arrangement would have satisfied the law's command that Homer Eggemeyer must support his minor children without divesting Homer of his title in his separate property.

Article 4639a, enacted in 1935, for the first time authorized divorce courts to inquire into the financial circumstances of the parties and to make orders for child support. Prior to this article's enactment, the Texas courts fashioned a method for enforcing the parents' legal duty to provide child support. The parents' property, whether community or separate, was subjected to a

trust or some other form of interim management to insure the payment of child support. *Cunningham v. Cunningham,* 120 Tex. 491, 40 S.W.2d 46 (1931); *Fitts v. Fitts, supra.* When the duty of support to the minor was fulfilled, the property was freed from the trust. This method did not divest nor transfer to another person the owner's fee title.

■ Virginia Eggemeyer states that section 3.63 of the Family Code authorizes the divestiture of Homer's separate realty and its vesting in her because the trial court can make such an order when it is "just and right." The statute is, of course, wholly silent about that matter. The argument is that the earlier article 4638 specifically prohibited the divestiture of title [1] whereas the Family Code does not.[2] From this omission, she argues the legislature intended to change the law and to authorize a divestiture. This is not a correct result for several reasons.

The legislative commentary which accompanied the section when it was being considered by the legislature stated: "This is a codification of present law." McKnight, *Commentary on Sec. 3.63,* 5 Tex.Tech L.Rev. 337 (1974). The legislature believed it was making no change but was carrying forward the law as it then existed.

Section 14.05(a) of the Family Code supplies additional evidence of the legislature's intent to keep the law unchanged and as it was under article 4638. In construing section 3.63, section 14.05(a) has apparently escaped the consideration of the parties. As appears from the section's second sentence, section 14.05(a) carried forward into the Family Code what was well established by judicial precedent:

§ 14.05. Support of Child

(a) The court may order either or both parents to make periodic payments or a lump-sum payment, or both, for the support of the child until he is 18 years of age in the manner and to the persons specified by the court in the decree. *In addition, the court may order a parent obligated to support a child to set aside property to be administered for the support of the child in the manner and by the persons specified by the court in the decree.* [Emphasis added.]

The legislature expressly authorized the setting aside of property "to be administered," not divested, and "for the support of the child," but not for the support of a spouse. That was a codification of existing law. Section 3.63 does not expressly authorize the divestiture of separate realty, but section 14.05 does expressly authorize an interim administration of a spouse's property to assure the payment of child support. The reasonable conclusion is the legislature in enacting section 14.05 was codifying existing law.

■ Other evidence of legislative intent is derived from that part of section 3.63 which declares a divorce decree shall order "a division of the estate of the parties in a manner that the court deems just and right." The only "estate of the parties" is community property. Under former article 4638, we construed "the estate of the parties" to mean community property. *Reardon v. Reardon,* 359 S.W.2d 329 (Tex.1962); *Hailey v. Hailey,* 160 Tex. 372, 331 S.W.2d 299 (1960); *Mansfield v. Mansfield,* 308 S.W.2d 80 (Tex.Civ.App.1958, writ dism'd). The community estate may logically be the subject of "a division." The statute does not authorize a division of the "estates" of the parties. McKnight, *Commentary on Sec. 3.63,* 5 Tex.Tech L.Rev. 338 (1974).

1. Article 4638. [4634] [2980] [2864] Division of property.—The court pronouncing a decree of divorce shall also decree and order a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and their children, if any. Nothing herein shall be construed to compel either party to divest himself or herself of the title to real estate. [P.D. 3452.]

2. Section 3.63: In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage.

■ A constitutional problem also arises from the trial court's decree that the husband's separate property shall become the separate property of the divorced wife. The nature of property is fixed by the Texas Constitution, and not by what is "just and right." Culpability may, despite no-fault divorce, be a basis for the dissolution of a marriage, but it is no basis for a redefinition of property at variance with the Texas Constitution. Section 15, article XVI of the Texas Constitution declares that a wife's property, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent shall be the separate property of the wife.[3] By reason of legislation, the husband's property is classified the same way.[4] If one spouse's separate property may by a divorce decree be changed from the separate property of the one spouse into the separate property of the other, there is a type of separate property which is not embraced within the constitutional definition of the term. This question has never been confronted by this court, and as Professor McKnight has written: "Thus a constitutional issue that has never been raised needs resolution." McKnight, *Matrimonial Property*, 27 Sw. L.J. 37, 38 (1973).

This court held in *Arnold v. Leonard,* 114 Tex. 535, 273 S.W. 799 (1925), and again in *Graham v. Franco,* 488 S.W.2d 390, 392 (Tex.1972), that the constitutional definition of separate property was intended to be exclusive and that it may not be altered or enlarged by an act of the legislature. *See also, Gorman v. Gause,* 56 S.W.2d 855 (Tex. Com.App.1933, holding approved); Huie, *The Texas Constitutional Definition of the Wife's Separate Property,* 35 Tex.L.Rev.

1054, 1057–1058 (1957). This court has also held that the legislature cannot transform one type of constitutionally defined property into another type of property. *Williams v. McKnight,* 402 S.W.2d 505 (Tex.1966). We said in *Hilley v. Hilley,* 161 Tex. 569, 342 S.W.2d 565, 567–568 (1961):

All marital property is thus either separate or community. If acquired before marriage by any method, or after marriage by gift, devise or descent, it is separate; otherwise, it is community. . . Property purchased with separate funds is separate . . . and community property partitioned in the manner provided in Articles 4624a and 881a–23, becomes separate property.

■ There is another constitutional problem. The protection of one's right to own property is said to be one of the most important purposes of government. That right has been described as fundamental, natural, inherent, inalienable, not derived from the legislature and as preexisting even constitutions. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); 28 A.L.R. 1321 (1924); 16 Am. Jur.2d, *Constitutional Law* § 362 (1964). Article I, section 19, of the Texas Constitution[5] explains that no citizen of this state shall be deprived of his property except by the due course of the law of the land. The due course that protects citizens requires not only procedural but also substantive due course. *See* Interpretive Commentary after section 19, art. I, Tex.Const., p. 448, Vernon's Tex.Const: "One person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation

---

3. All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of the wife . . . ..

4. Section 5.01. Marital Property Characterized
   (a) A spouse's separate property consists of:
     (1) the property owned or claimed by the spouse before marriage;
     (2) the property acquired by the spouse during marriage by gift, devise, or descent; and

   (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.
   (b) Community property consists of the property, other than separate property, acquired by either spouse during marriage.

5. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. Tex.Const. art. I, § 19.

be paid." *Thompson v. Consolidated Gas Co.,* 300 U.S. 55, 80, 57 S.Ct. 364, 376, 81 L.Ed. 510 (1936). This court quoted and relied upon that statement from *Thompson* in *Marrs v. Railroad Commission,* 142 Tex. 293, 177 S.W.2d 941, 949 (1944). There is no contention that the taking of Homer's separate property and its transfer to Virginia is justified by any benefit to the public welfare. The taking was not grounded upon the police power; consequently, the taking from Homer would not have been a constitutional act even if the legislature had expressly authorized the divestiture of one person's property and its vesting in another person.

The court of civil appeals, as stated above, held correctly that the trial court may set aside either spouse's separate real property, its income, rents, or revenues for the support of the minor children. Chief Justice Hemphill, writing in *Rice v. Rice,* 21 Tex. 58, 71 (1858) said:

The separate property may be divided in cases of necessity; or the whole, both separate and community, may be kept together as in this case, for the benefit of the children; but the decree must not divest either party of their title in the lands or slaves. It will be no breach of the statute to decree the use of property, for some period, to the use of the children, reserving the fee of the property in the husband to be enjoyed by him after the expiration of the trust estate for the children.

The basis for the holding was the duty of the parent to support his children whether from the community or the separate estate. The trial court judgment which was approved in *Rice* was that a receiver under bond would take charge of the property, collect the proceeds, and apply them to the support, education, and maintenance of two minor children. *Rice, supra,* 64.

Virginia Eggemeyer strongly relies upon *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W. 21 (1923), as supporting her contention that Homer Eggemeyer's separate property may be transferred to her. The husband and father in that divorce action owned one hundred acres as his separate property which was also the family homestead. It was the homestead interest not the land itself, that was granted the wife and two children of the marriage "during the balance of the natural life of the plaintiff (mother)." The lands were adjudged the property of the husband, and the decree was that "Possession of said land to revert to said defendant, J. G. Hedtke at the termination of said homestead rights as herein provided. . . ." In that case, the reason for the rule was also expressed; it was the husband's burden to support his family. The court was overbroad in its statement that the divorced husband owed family obligations to the divorced wife as distinguished from their children, but the court clearly recognized the limitations upon divesting title:

For the purpose of doing equity, the court may award all the personal property to either spouse, and may subject the income, rents, or revenues of all real estate belonging to either or both of the spouses, to the support of either or both of them, or to the education and support of the children.

██ The case concerned homestead rights, that is, the use of the husband's separate property upon which homestead rights accrued during marriage. Homestead rights are different from the community or separate character of property. In *Hedtke,* homestead rights were properly subject to the decree as a part of the court's order for support of the children. We should not extend this precedent which upholds a right to a continued use of separate property as homestead to a right to divest title in separate property.

██ The dictum of *Hedtke v. Hedtke, supra,* that a divorce court may dispose of "any and all property of the parties, separate or community" in the exercise of a wide discretion which will be corrected only where there is an abuse of discretion is, in general, a sound rule. *See, Hailey v. Hailey,* 160 Tex. 372, 331 S.W.2d 299 (1960). It was not, however, essential to the decision. The trial court had decreed the homestead

right during the life of the divorced wife, but provided further that "[p]ossession of said land to revert to said defendant J. G. Hedtke, at the termination of said homestead rights . . .." Trial courts have a broad latitude in the division of the marital community property, but that discretion does not extend to a taking of the fee to the separate property of the one and its donation to the other. This is the construction which this court has previously given *Rice* and *Hedtke.* See *Cunningham v. Cunningham,* 120 Tex. 491, 40 S.W.2d 46 (1931).

The language and holdings of a number of courts of civil appeals are reviewed and distinguished in *Ramirez v. Ramirez,* 524 S.W.2d 767 (Tex.Civ.App.1975, no writ). We agree with that decision. We disapprove the language of *Wilkerson v. Wilkerson,* 515 S.W.2d 52 (Tex.Civ.App.1974, no writ), as well as the language and holdings of those decisions which have construed section 3.63 of the Family Code at variance with this opinion, *Baxla v. Baxla,* 522 S.W.2d 736 (Tex.Civ.App.1975, no writ); *In re Marriage of Butler,* 543 S.W.2d 147 (Tex. Civ.App.1976, writ dism'd); *Burns v. Burns,* 541 S.W.2d 280 (Tex.Civ.App.1976, no writ); *Dietz v. Dietz,* 540 S.W.2d 418 (Tex.Civ. App.1976, no writ); *Merrell v. Merrell,* 527 S.W.2d 250 (Tex.Civ.App.1975, writ ref'd n.r.e.); *Harrison v. Harrison,* 495 S.W.2d 1 (Tex.Civ.App.1973, no writ); *In re Marriage of McCurdy,* 489 S.W.2d 712 (Tex.Civ.App. 1973, writ dism'd); *Medearis v. Medearis,* 487 S.W.2d 198 (Tex.Civ.App.1972, no writ). See McKnight, *Division of Texas Marital Property on Divorce,* 8 St. Mary's L.J. 413, 444–449 (1976).

The correct rule, as stated by the court of civil appeals in this case, is that a parent owes a duty to support his child and that duty can be enforced against the parent and his separate property. A receiver or trustee may be named to assure compliance with the order for child support. The fee to the separate property, however, may not be divested.

We affirm the judgment of the court of civil appeals reversing the trial court's divestiture of the husband's separate proper-

ty and remanding the cause to the trial court to determine whether an interim arrangement for the support of the children should be made.

STEAKLEY, J., joined by GREENHILL, C. J., and REAVLEY and YARBROUGH, JJ., dissent.

## ON MOTION FOR REHEARING

STEAKLEY, Justice, dissenting.

The dissenting opinion delivered May 18, 1977 is withdrawn, and the following is substituted therefor.

This case presents a narrow and easily articulable question: Does Section 3.63 of the Texas Family Code authorize the divestiture of title to a spouse's separate real property where such action is necessary to effect a "just and right" division of the marital property of divorcing spouses? In the instant case the Court of Civil Appeals held the trial court did not have such authority, citing *Ramirez v. Ramirez,* 524 S.W.2d 767 (Tex.Civ.App.—Corpus Christi 1975, no writ). *Eggemeyer v. Eggemeyer,* 535 S.W.2d 425 (Tex.Civ.App.—Austin 1976). A majority of this Court affirms that holding. I would reverse the judgment of the Court of Civil Appeals and affirm that of the trial court, the effect of which would be to divest Homer Eggemeyer of a one-third undivided interest in the family farm, an interest which was his separate property by virtue of a gift from his mother.

Section 3.63 of the Texas Family Code provides:

In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage.

Tex. Family Code Ann. § 3.63 (1975). The predecessor statute repealed by the enactment of the Family Code was Article 4638. It provided:

The court pronouncing a decree of divorce shall also decree and order a divi-

sion of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and their children, if any. *Nothing herein shall be construed to compel either party to divest himself or herself of the title to real estate.* [Emphasis added.]

*See* Tex. Laws 1841, An Act Concerning Divorce and Alimony §§ 1–14, at 19–22, 2 H. Gammel, Laws of Texas 483–486 (1898). The italicized sentence in Article 4638, and in all its predecessor statutes, was not carried forward in Section 3.63. Notwithstanding, the majority here holds that Section 3.63 does not authorize the trial court to divest a divorcing spouse of his or her separate real property when ordering a division of the marital estates. *Accord, Ramirez v. Ramirez, supra. Contra, Wilkerson v. Wilkerson,* 515 S.W.2d 52 (Tex.Civ.App.—Tyler 1974, no writ). Established principles of statutory construction require the opposite result. Furthermore, such a result does not contravene either the United States or Texas Constitution.

## I.

The majority construes the phrase "estate of the parties" to mean only the community property of the spouses. Such a construction, while perhaps grammatically sound, is contrary to well-established Texas law and practice. In *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W. 21 (1923), this Court iterated the parameters of a trial court's discretion in dividing the property of divorcing spouses. Construing the language of Article 4638, the Court wrote:

> The estate subject to division, under the statute, include[s] all property of the parties whether community property or separate property. The meaning of the statute is not different from what it would have been had the word "property" been substituted in its phraseology for the word "estate." . . .

Id. at 22. The construction adopted by the Court in *Hedtke* has been accepted and adhered to ever since. *See, e.g., In re Marriage of Jackson,* 506 S.W.2d 261 (Tex.Civ.

App.—Amarillo 1974, writ dism'd); *Dorfman v. Dorfman,* 457 S.W.2d 417 (Tex.Civ.App.—Texarkana 1970, no writ); *Earnest v. Earnest,* 223 S.W.2d 681 (Tex.Civ.App.—Amarillo 1949, no writ); Smith, *Family Law,* 26 Sw.L.J. 51, 55 & n.30 (1972). The phrase "estate of the parties" was carried forward into Section 3.63. In construing a statute we must assume the Legislature was aware of prior judicial interpretations, and reenactment of a statute or portion thereof without a change in its language indicates approval of such prior judicial interpretations. *Koy v. Schneider,* 110 Tex. 369, 221 S.W. 880 (1920); *Gabbert v. City of Brownwood,* 176 S.W.2d 344 (Tex.Civ.App.—Eastland 1943, writ ref'd); 2A Sutherland, Statutes and Statutory Construction § 45.12 (4th ed. 1973). Thus, I would construe "estate of the parties," in accordance with established Texas law, to mean all property of the parties, whether real or personal, separate or community.

I respectfully suggest the majority's construction of "estate of the parties" finds no support in the cited authorities, *Reardon v. Reardon,* 163 Tex. 605, 359 S.W.2d 329 (1962); *Hailey v. Hailey,* 160 Tex. 372, 331 S.W.2d 299 (1960), and *Mansfield v. Mansfield,* 308 S.W.2d 80 (Tex.Civ.App.—El Paso 1958, writ dism'd). None of these cases contain language purporting to construe the disputed phrase. In *Reardon* the Court of Civil Appeals, uncertain of the effect of a prior decision of this Court, certified a question to the Court. The only issue was whether or not the proviso of Article 4638 proscribing the divestiture of title to real estate was applicable to community property. This Court reiterated its holding in *Hailey, supra,* and held that the prohibition against the divestiture of title did not apply to community real property. No other issue was before the Court, and no other language of the statute was involved. Specifically, the Court did not expressly or impliedly ascribe a meaning to the phrase "estate of the parties." In *Hailey, supra,* the spouses owned two lots as community property. The trial court granted the parties a divorce and awarded one lot to each spouse. The Court of Civil Appeals re-

versed the trial court on the ground that it was error to award one lot to each party. This Court reinstated the trial court judgment, holding that the divestiture of a spouse's interest in community real property was not prohibited by the proviso of Art. 4638. Again, the opinion of this Court contained no construction of the phrase "estate of the parties." *Mansfield v. Mansfield, supra,* did not reach this Court, but it, too, involved the question of whether a trial court's division of community real property ran afoul of the statutory prohibition against divestiture of title to real estate. The Court of Civil Appeals there held that such divestiture was not proscribed by the statute. It did not purport to construe "the estate of the parties." The majority also cites an article by Professor McKnight as supporting its construction of "estate of the parties." *See,* McKnight, Commentary on Sec. 3.63, 5 Tex.Tech.L.Rev. 338 (1974). McKnight does suggest that the majority's construction is logically supportable, but he also notes that the majority construction *"would . . . depart from long usage* with respect to discretionary division of separate personalty." *Id.* [Emphasis added.]

*Reardon, Hailey,* and *Mansfield, supra,* are important to the resolution of this case for another reason, however. Those cases establish beyond question that the Art. 4638 prohibition against the divestiture of title to real estate applied only to separate realty. The reasoning of this Court in *Hailey,* reaffirmed in *Reardon,* was that a division of community realty does not involve a divestiture of title but instead effects a partition of real property between persons already possessing title thereto.

The pronouncements of this Court in *Hedtke* and *Hailey* established the parameters of Article 4638 within which a trial court could exercise its discretion in dividing the property of a divorcing husband and wife. In *Hedtke* this Court construed "estate of the parties" to mean all property of the parties, community and separate. In *Hailey* we held the prohibition against divestiture of title to real estate applied only to the separate real property of the spouses and did not prohibit the division of community realty upon divorce. At the time of the enactment of Section 3.63 the law was clear—a court dividing the marital properties was authorized to award community realty, community personalty, and separate personalty to either spouse upon a determination that such was "just and right."[1] It could not, however, award one spouse's separate realty to the other because the last sentence of Article 4638 prohibited it.

There is no difference in the constitutional classification of separate real and separate personal property. It is therefore unmistakably implicit in the decisions of this Court and the various courts of civil appeals that absent the statutory prohibition against the divestiture of title to real estate, an award of separate realty would also be within the authority of the trial court in ordering a division of the estate of the divorcing parties. It was precisely this prohibition that was removed by the Legislature in the enactment of Section 3.63. Ordinarily, the fact "that significant words are omitted from the re-enactment or amendment of a statute imports a conclusive presumption that the Legislature intended to exclude the object theretofore accomplished by the abandoned words."

1. See also *Fitts v. Fitts,* 14 Tex. 443 (1855); *Rice v. Rice,* 21 Tex. 58 (1858); *Simons v. Simons,* 23 Tex. 344 (1859); *Cooper v. Cooper,* 513 S.W.2d 229 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ); *Dorfman v. Dorfman,* 457 S.W.2d 417 (Tex.Civ.App.—Texarkana 1970, no writ); *Keene v. Keene,* 445 S.W.2d 624 (Tex.Civ.App.—Dallas 1969, writ dism'd); *Roye v. Roye,* 404 S.W.2d 92 (Tex.Civ.App.—Tyler 1966, no writ); *Allen v. Allen,* 284 S.W.2d 774 (Tex.Civ.App.—Galveston 1955, writ dism'd); *Rylee v. Rylee,* 244 S.W.2d 717 (Tex. Civ.App.—El Paso 1951, no writ); *Donias v. Quintero,* 227 S.W.2d 252 (Tex.Civ.App.—El Paso 1949, no writ); *Jones v. Jones,* 211 S.W.2d 269 (Tex.Civ.App.—El Paso 1944, no writ); *Puckett v. Puckett,* 205 S.W.2d 124 (Tex. Civ.App.—Texarkana 1947, no writ); *Tims v. Tims,* 201 S.W.2d 865 (Tex.Civ.App.—Amarillo 1947, writ dism'd); *Smith v. Smith,* 187 S.W.2d 116 (Tex.Civ.App.—Fort Worth 1945, no writ); *Lewis v. Lewis,* 179 S.W.2d 594 (Tex.Civ.App. —Fort Worth 1944, no writ); *Hamm v. Hamm,* 159 S.W.2d 183 (Tex.Civ.App.—Fort Worth 1942, no writ).

*Gateley v. Humphrey,* 151 Tex. 588, 254 S.W.2d 98 (1952). Stated differently, there is a presumption that if a change occurs in legislative language, a change was intended in legislative result. 2A Sutherland, Statutes and Statutory Construction § 45.12 (4th ed. 1973). Where the language of a statute is plain and clear, it must be given effect as written. *Railroad Commission of Texas v. Miller,* 434 S.W.2d 670 (Tex. 1968); *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66 (1920). I would give effect to the language of Section 3.63 and hold that a trial court adjudicating a divorce has the authority to divide all the marital properties, whether real or personal, separate or community.

In construing the statute, the majority relies on a statement by Professor McKnight that the legislative commentary which accompanied the statute stated: "This is a codification of present law." *See,* McKnight, *Commentary on Sec. 3.63,* 5 Tex. Tech.L.Rev. 337 (1974). From this fact the majority concludes the Legislature believed it was making no change in the law by enacting Section 3.63. Clearly the courts recognized the Legislature had in fact changed the law. *See, e.g., Wilkerson, supra; Baxla v. Baxla,* 522 S.W.2d 736 (Tex. Civ.App.—Dallas 1975, no writ). The action of the courts in divesting title to separate realty made known to the Legislature the effect of its action. Furthermore, commentators were quick to point out the omission. *See, e.g.,* Smith, *Family Law,* 26 Sw.L.J. 51, 55 (1972). The Legislature has met in regular session four times since the effective date of Section 3.63, and it has considered legislation to restore the prohibition against the divestiture of title to separate realty.[2] Yet it has chosen not to restore the statutory prohibition.

Section 14.05(a) of the Family Code is said to provide additional evidence that the Legislature intended to keep the law unchanged. I respectfully submit that Section 14.05 does not provide support for the majority's result and, indeed, is irrelevant to the question now before this Court. Section 14.05, entitled "Support of Child," is concerned with what provision may be made for the support of children of the marriage. It provides that "the court may order a parent obligated to support a child to set aside property to be administered for the support of the child in the manner and by the persons specified by the court in the decree." Tex. Family Code Ann. § 14.05(a) (1970). The majority points out that Section 14.05 does not authorize the divestiture of title to property in order to provide support for a child, nor does it provide for the support of the wife. The question before us is unrelated to the statutory obligations of support. We are here concerned only with what authority a trial court may exercise in dividing the property of the spouses upon divorce. Questions having to do with methods of enforcing the support obligations of a parent are totally independent of and apart from questions concerning the authority of a trial court to divide the marital properties between divorcing spouses "in a manner that the court deems just and right."

## II.

The majority opinion concludes that its construction of Section 3.63 is mandated by the United States and Texas Constitutions. The argument is two-pronged. First, according to the majority, the constitutional definition of separate property is exclusive and does not permit the "creation" of separate property via the judicial act of divesting the separate property of one spouse and awarding it to the other. Secondly, the majority concludes that the taking of one spouse's separate property and its transfer to the other would violate the due process mandate that one person's property may not be taken for the benefit of another private person without a justifying public purpose.

The original predecessor statute to Section 3.63 was enacted in 1841 and was not materially amended until the enactment in 1969 of Section 3.63 of the Texas Family

---

2. *See* 63rd Legislature, House Bill No. 102; 65th Legislature, House Bill No. 524.

Code. The pertinent portion of Article 16, Section 15 of the Texas Constitution has had a similarly long life and has not been amended in any relevant particular. That section now provides, in pertinent part:

"Sec. 15. All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of the wife; *and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband; . . .*" (Italics added).

The property of the husband is similarly characterized by statute. See Tex. Family Code Ann. § 5.01 (1975). The original predecessor of Article 16, Section 15 of the present Constitution was Article 7, Section 19 of the Texas Constitution of 1845. It was then provided in identical language:

"Sec. 19. All property both real and personal of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, shall be her separate property; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property, as that held in common with her husband. . . ."

Thus, the Legislature, in passing the original statute of 1841 and in re-enacting the statute through the years, culminating in the enactment of Section 3.63 of the Family Code in 1969, has acted pursuant to the constitutional mandate to pass laws "more clearly defining the rights of the [marital partners], in relation as well to [their] separate property, as that held in common with [the other spouse]."

The authority granted a trial court by Section 3.63 does not authorize the creation of a type of separate property inconsistent with the constitutional definition of the term. *See* Article 16, Section 15, *supra*. As noted above, the majority asserts that where a trial court divests one spouse's title to separate property and awards it to the other spouse as his or her separate property, the property cannot constitutionally become the separate property of the second spouse because it is neither "owned or claimed . . . before marriage" nor "acquired afterwards by gift, devise, or descent." This argument fails for two reasons. First, the property division directed by Section 3.63 occurs after the divorce of the parties, and Article 16, Section 15, providing for the initial characterization of property, does not control this situation. Secondly, the constitutional definition of separate property is not exclusive. There are numerous recognized classifications of separate property that consist of property "not owned or claimed" before marriage or "acquired afterward by gift, devise or descent." This is true, for example, of mutations of separate property and of post-marriage increases in the value of separately held land and personalty. *See Stringfellow v. Sorrells,* 82 Tex. 277, 18 S.W. 689 (1891); *Love v. Robertson,* 7 Tex. 6 (1851); *Lessing v. Russek,* 234 S.W.2d 891 (Tex.Civ.App.—Austin 1950, writ ref'd n.r.e.); *Evans v. Purinton,* 12 Tex.Civ.App. 158, 34 S.W. 350 (Tex.Civ.App. —1896, writ ref'd). *See also McKnight, supra,* at 337. Similarly, personal injury awards are the separate property of the injured spouse under the statutory mandate that a spouse's separate property includes the "recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage." Tex. Family Code Ann. § 5.01(a) (1975).

In support of its holding that the constitutional definition of separate property was intended to be exclusive and that it may not be altered or enlarged by an act ·of the Legislature, the majority cites *Arnold v. Leonard,* 114 Tex. 535, 273 S.W. 799 (1925), and *Graham v. Franco,* 488 S.W.2d 390 (Tex. 1972). In *Arnold* this Court found to be unconstitutional a statute which provided that income from a wife's separate property was the separate property of the wife. After a lengthy review of relevant authority, this Court concluded the statute there in question impermissibly attempted to expand the constitutional definition of the wife's separate property, a definition the court held to be exclusive. However, this

Court's most recent consideration of the constitutional definition of separate property suggests a more flexible approach. In *Graham v. Franco, supra,* the Court considered the constitutionality of a statute providing that personal injury recoveries were the separate property of the injured spouse. Discussing *Arnold v. Leonard, supra,* this Court recognized that the rationale of *Arnold* was "one of implied exclusion, i.e., if property was acquired during marriage by any other means than gift, devise, or descent, it was and is necessarily community." *Graham v. Franco, supra* at 392. Continuing, the Court wrote:

A much later case of this Court reverted to a test more akin to that prevailing under the Spanish and Mexican law, and several early opinions of this Court, dealing with community property. It applied an affirmative test; i.e., that property is community which is acquired by the work, efforts or labor of the spouses or their agents, as income from their property, or as a gift to the community. Such property, acquired by the joint efforts of the spouses, was regarded as acquired by "onerous title" and belonged to the community. *Norris v. Vaughan,* 152 Tex. 491, 260 S.W.2d 676 (1953); *DeBlane v. Lynch,* 23 Tex. 25 (1859); *Smith v. Strahan,* 16 Tex. 314 (1856); *Epperson v. Jones,* 65 Tex. 425 (1886); De Funiak, Principles of Community Property (1971) § 62; Moynihan, Community Property, 2 American Law of Property (1952) § 7.16. Under this reasoning, it is clear that the personal injuries to the wife are not "acquired" by the efforts of the spouses and would not belong to the community. Thus in *Norris v. Vaughan, supra,* Justice Smith wrote for this Court that:

"The principle which lies at the foundation of the whole system of community property is, that whatever is acquired by the joint efforts of the husband and wife, shall be their common property."

Id. at 392–393. Thus, rather than emphasizing the exclusivity of the constitutional definition of separate property, *Graham* supports a more flexible interpretation of the provision, one recognizing that such flexibility is necessary in order to solve problems that occasionally arise in the application of existing principles of marital property law. *See* Huie, *The Texas Constitutional Definition of the Wife's Separate Property,* 35 Tex.L.Rev. 1054, 1061 (1957).

The second constitutional ground upon which the majority relies is the absence of due process of law, or, as the Texas Constitution refers to it, "due course of the law of the land." Tex.Const. art. I, § 19. The majority holds that a trial court's divestiture of title to one spouse's separate property and subsequent investiture of title in the other spouse would violate substantive due course, i.e., would be a taking of private property unjustified by a resultant benefit to the public welfare. The majority relies on the opinion of this Court in *Marrs v. Railroad Commission,* 142 Tex. 293, 177 S.W.2d 941 (1944), as supporting its holding. In *Marrs* it was alleged that, by virtue of an order of the Railroad Commission setting an arbitrarily low allowable in one section of an oil field, the plaintiffs' land was being drained of oil and gas. This Court upheld the plaintiffs' claim that the Commission's order resulted in an unconstitutional taking of private property and the gift of it to another private person without a justifying public purpose. *See Thompson v. Consolidated Gas Co.,* 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510 (1936). The only "public purpose" possibly served by the Commission's order was the conservation of valuable natural resources, but the evidence in *Marrs* did not indicate the order in question was necessary to accomplish that purpose.

The case of a statutory scheme for the division of property upon divorce, a scheme which authorizes a court to award one spouse's separate property to the other where necessary to effect a "just and right" property division, presents uniquely different questions. The special relationship between the state and the institution of marriage has often been recognized. *See, e. g., Williams v. North Carolina,* 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). The nature

and effect of this special relationship have been described as follows:

> Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, *its effects upon the property rights of both, present and prospective,* and the acts which may constitute grounds for its dissolution. [Emphasis added.]

*Maynard v. Hill,* 125 U.S. 190, 205, 8 S.Ct. 723, 726, 31 L.Ed. 654 (1887). *See also Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1966) ("a social relation subject to the State's police power"); *Haddock v. Haddock,* 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867 (1906); *Andrews v. Andrews,* 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366 (1902); *Baker's Executors v. Kilgore,* 145 U.S. 487, 12 S.Ct. 943, 36 L.Ed. 786 (1891); 1 Simpkins, Texas Family Law § 1:1 (1975); 55 C.J.S. *Marriage* § 2 (1948).[3] The broad regulatory powers of the state over the institution of marriage clearly extend to the division of property upon divorce. Furthermore, it is within the power of the Legislature to provide, as it impliedly has, that upon divorce one spouse's separate property can be awarded to the other where necessary to effect a "just and right" property division. Because of the state's pervasive interest in and control over the marriage relation, partners entering a marriage do so subject to the present and future laws of Texas governing the relationship. Section 3.63 of the Texas Family Code is such a law, and the action of a trial court dividing the marital property, both separate and community, pursuant to the statutory mandate, would not deny either party due course of the law of the land.

There is a public purpose served by the statutory investiture of trial courts with the broad power to divide the divorcing spouses' separate and community real and personal property as they deem "just and right." That purpose is to insure that one spouse does not, through artful management of the marital property, accumulate a separate estate of substantial value at the expense of the separate estate of the other spouse or at the expense of the community and then, upon divorce, retain that separate estate and relegate the other spouse to his or her separate estate and to the potentially depleted community estate. By prohibiting the invasion of a spouse's separate property where necessary to effect a just and right property division, the majority sanctions and promotes the societal disharmony resulting from inequitable property settlements upon divorce. In my view the Legislature sought to avoid this potential injustice by granting the trial court broad discretion in dividing the property of the marriage. The holding of the majority narrowly circumscribes that discretion and, in my opinion, is neither mandated by the Constitution nor comports with the statutory provisions.

As noted above, the constitutional rule relied upon by the majority mandates that one person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid. *See Marrs v. Railroad Commission, supra.* If this rule applies in the instant case to prohibit the divestiture of one spouse's title to separate property in order to equitably divide the property of the marriage, I suggest that the enforcement of a personal injury judgment is similarly prohibited. Clearly such a judgment takes one private person's property for the benefit of another, and if there is no "justifying public purpose" in the instant case, there is none in the hypothetical personal injury case. It seems to me there is a "justifying public purpose" in both situa-

---

**3.** One writer notes that marriage is a civil institution in reference to which "public interests overshadow private—one which public policy holds specially in the hands of the law for the public good, and over which the law presides in a manner not known in other departments." 1 Bishop on Marriage, Divorce and Separation § 5 (1891).

149

tions. In a personal injury case, the state has an interest in seeing the injured party compensated for his negligently inflicted injury. In the absence of such compensation, the injured party might be unable to recover financially or spiritually from the accident. Additionally, it is equitable to provide that the negligent party should make reparation to those injured by his negligence. In the case of property division upon divorce, the state has an interest in seeing the property of the marriage equitably divided so as to avoid the imposition of undue financial hardship upon one spouse. Equitable property divisions minimize the deleterious financial and emotional effects of divorce and, therefore, minimize interpersonal conflict. Furthermore, it is just to allow a trial court broad discretion in dividing the marital property in order that each spouse might participate, to the extent deserved, in the economic gains of the marriage.

### III.

To reiterate, I would hold that Section 3.63 authorizes a trial court to divest title to one spouse's separate real property and to award that property to the other spouse as his or her separate property. The Constitution does not prohibit such statutory authorization, and the clear language of the statute demands such an interpretation. I recognize that as a general rule separate property, whether real or personal, should be restored to its owner and the community property of the marriage divided as seems just and right. *Fitts v. Fitts,* 14 Tex. 443 (1855); *Fuhrman v. Fuhrman,* 302 S.W.2d 205 (Tex.Civ.App.—El Paso 1957, writ dism'd). As this Court wrote in *McElreath v. McElreath,* 162 Tex. 190, 345 S.W.2d 722 (1961), each spouse primarily "must look to the community property for her [his] share of the material gains incident to an ill-starred marriage." *Id.* at 724. Furthermore, the conceptual basis of community property is the notion that spouses should share as equal partners in the benefits and burdens of the marriage. When the marriage is terminated, the primary fund to be divided is that comprised of assets acquired by the spouses as a community. The invasion of the separate property of one spouse for the benefit of the other can be justified only in exceptional circumstances. This is illustrated by the action of the Court of Civil Appeals in *Cooper v. Cooper,* 513 S.W.2d 229 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ).

I would reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

GREENHILL, C. J., and REAVLEY and YARBROUGH, JJ., join in this dissent.