# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00116-CV

**Curtis L. Delancey, Appellant**

**v.**

**Marian D. Delancey, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 423RD JUDICIAL DISTRICT NO. 06-10892, HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Marian Delancey and Curtis Delancey filed a petition and counter-petition for divorce. After a bench trial, the court granted the divorce and divided the parties' property. In a previous appeal, Curtis[1] complained of various aspects of the divorce decree. This Court reversed the portion of the decree dividing the community estate and remanded the cause for a new property division. *See Delancey v. Delancey*, No. 03-10-00240-CV, 2011 WL 677401 (Tex. App.—Austin Feb. 24, 2011, no pet.) (mem. op.). The trial court conducted a second bench trial and signed another order of divorce. Curtis now appeals that order, contending in five issues that the trial court erred by (1) imposing an equitable lien to secure a claim for economic contribution on a piece of real estate that was his separate property and his homestead, (2) ordering the Curtis Delancey Family Trust to execute a promissory note in favor of Marian and a deed of trust to secure that note, and

---

[1] For clarity, we will refer to the parties by their first names.

(3) including his separate property in its division of the estate of the parties. We will affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Curtis and Marian entered into an informal marriage on October 3, 1983, and separated in 2003. Marian filed her original petition for divorce in June 2006, and Curtis later filed a counter-petition for divorce. Before the marriage, Curtis had purchased a piece of property located at 5106 Johnson Boulevard in Austin. The address for this property was later changed to 5106 General Aviation Boulevard ("the General Aviation property") when nearby Bergstrom Air Force Base became Austin-Bergstrom International Airport. Curtis testified that he bought the land for $25,000 in 1978. He paid $5,000 in cash and assumed the prior owner's mortgage. The payments on the note were $153 per month, which he paid himself until he and Marian married, after which they paid the note together.

In early 2006, Curtis, acting through a real estate agent, inquired whether the City of Austin was interested in purchasing the General Aviation property. On several occasions over the course of the previous decade, the City had expressed an interest in buying or taking the land for use associated with the nearby airport. Curtis and Marian testified that the City's interest in obtaining the land was so strong that they declared bankruptcy in the mid-1990s as a way to prevent the City from taking the land. According to the parties, they had rejected the City's purchase offers because

---

[2] The background facts are set forth in more detail in this Court's previous opinion. Because the scope of this appeal is limited to the division of the community estate, we confine our discussion to facts relevant to that issue.

2

the amounts offered were too low to allow them to relocate the business they operated on the property. In June 2006 the City ordered an appraisal of the land. Shortly thereafter, Curtis created the "Curtis Delancey Family Trust" and transferred ownership of the land to the trust. The trust was revocable and listed Curtis as both the primary trustee and beneficiary, with Marian and the couple's two adult children listed as secondary beneficiaries. The parties disagree on Curtis's motives for creating the trust. Marian testified that she believed Curtis created the trust and transferred ownership of the General Aviation property to shield it from a claim for equitable contribution by the community estate. Curtis denies this, noting that Marian and the couple's two children were both secondary trustees and beneficiaries and thus stood to control the trust or inherit its corpus should he become incapacitated or die. Curtis testified that he transferred the property to the trust because he was going to admit himself to a VA hospital for treatment of PTSD, was uncertain how long he would be hospitalized, and wanted to protect the property during his hospitalization.

In January 2007 the trust sold the General Aviation property to the City for $600,000. In our previous opinion, we held that the community's share in the appreciation of the General Aviation property in proportion to the community's contribution to the equity in the land (in the form of debt repayment) was $326,294. We remanded the cause for the trial court to divide the community's contribution claim on Curtis's separate-property estate. *See* Act of May 18, 2001, 77th Leg., R.S., ch. 838, § 5, 2001 Tex. Gen. Laws 1679, 1683, *amended by* Act of May 29, 2009, 81st Leg., R.S., ch. 768, § 7, 2009 Tex. Gen. Laws 1950, 1952 ("[T]he court shall determine the rights of both spouses in a claim for economic contribution . . . and in a manner that the court considers just and right having due regard for the rights of each party and any children of the

3

marriage shall . . . order a division of a claim for economic contribution of the community marital estate to the separate marital estate of one of the spouses; . . . .").[3]

On remand, the trial court ordered the community's $326,294 economic-contribution claim divided equally between Curtis and Marian. The trial court found that the funds from the sale of the General Aviation property were used to purchase property on Dee Gabriel Collins Road ("the Collins Road property"), which it found was Curtis's separate property. The court awarded Marian a judgment against Curtis's separate property estate in the amount of $163,147, representing her share of the economic-contribution claim. To secure this judgment, the court imposed an equitable lien on the Collins Road property and also decreed that the judgment debt would be evidenced by a Note and a Deed of Trust on the Collins Road property. This appeal followed.

## DISCUSSION

In his first issue, Curtis challenges the trial court's imposition of an equitable lien on the Collins Road property. First, citing family code section 3.406(a), Curtis contends that the lien was improper because the Collins Road property was not the property that was improved by the community contributions. In Curtis's view, the trial court could only have imposed an equitable lien for economic contribution on the property directly benefitted by the contribution, which he claims was the General Aviation property. While Curtis contends that the Collins Road property was not

---

[3] Although the sections of the family code relevant to economic contribution that were in effect at the time the original petition for divorce was filed have since been repealed, they are controlling for purposes of this appeal.

benefitted by the contributions, the trial court found otherwise in its findings of fact and conclusions

of law filed after the first trial. Specifically, the trial court made the following findings:

> The Original Sales Price paid by [Curtis] for his separate property at 5106 General
> Aviation Blvd., Austin, Texas, was $25,000 in 1978 with $5,500 down and a note
> payable to Seller at the rate of $153 per month. [Curtis] paid the $5,500 down and
> assumed a note which was in the amount of $19,500 which the seller gave in the
> form of a note and secured it with his land in 1976. The note was reduced by the
> community in the amount of $153 per month or $1,836 per year for 8 years. The total
> paid on the note during this 8 years was $14,688. In 1991, $110,000 was borrowed
> by the community to pay the balance of the note and to make improvements on the
> property. The note was paid in full by the community estate for the benefit of
> [Curtis's] separate estate. [] The proceeds of the sale of this property were used to
> purchase the property located at 8409 and 8411 Dee Gabriel Collins Road in Austin,
> Texas *which is the property that was eventually benefitted as a result of the economic
> contribution claim.*

(Emphasis added.) The evidence supports the trial court's finding that the community contributions

were used to pay for the Collins Road property, and consequently there is more than a scintilla of

evidence that it is the property that benefitted from those contributions.[4]

---

[4] Moreover, former family code section 3.406, which applies to this case even though it has
since been repealed, supports the notion that the trial court has the discretion to place an equitable
lien on any of the other parties' property regardless of whether it was the same piece of property to
which the contribution was directly made. Section 3.406 provided:

> Subject to the homestead restrictions, an equitable lien under this section may be
> imposed on the entirety of a spouse's property in the marital estate and *is not limited
> to the item of property that benefitted from an economic contribution.*

Act of May 18, 2001, 77th Leg., R.S., ch. 838, § 2, 2001 Tex. Gen. Laws 1679, 1682, *repealed by*
Act of May 29, 2009, 81st Leg., R.S., ch. 768, § 11(4), 2009 Tex. Gen. Laws 1950, 1953 (emphasis
added). Thus, with respect to *community property*, the applicable statutory provision expressly
permitted imposing an equitable lien for economic contribution on *any* of the spouse's property
(subject to homestead restrictions) regardless of whether that property was benefitted by the
contribution. This section recognizes that fairness requires that an equitable lien be available to

5

Second, relying on *Heggen v. Pemelton*, 836 S.W.2d 145, 147 (Tex. 1992), Curtis asserts that the lien on the Collins Road property was improper because it was imposed "for the purpose of a just and right division." Curtis's reliance on *Heggen* is misplaced. As an initial matter, *Heggen* did not discuss liens imposed to secure a claim of economic contribution but rather to secure a claim for economic reimbursement. Moreover, *Heggen* does not stand for the proposition that an equitable lien may never be imposed on separate property as part of a just and right division of the community estate. Rather, the supreme court held:

> When dividing marital property on divorce, trial courts may impose suitable liens on one spouse's *separate real property* to secure the other spouse's right of reimbursement for community improvements to that property. Although courts may impress suitable liens on separate property to secure reimbursement rights, they may not impress such liens, absent any compensable reimbursement interest, simply to ensure a just and right division. In the case before us, the trial court granted Mr. Pemelton an equitable lien on separate real property to secure a judgment imposed by the court simply to ensure a just and right division. Thus, the trial court erred because it allowed this lien against Ms. Heggen's separate real property for reasons other than to secure Mr. Pemelton's reimbursement interest.

*Heggen*, 836 S.W.2d at 146 (citations omitted) (emphasis in original). Thus, while Curtis correctly states that in *Heggen* the supreme court held that an equitable lien may not be imposed on a spouse's separate property *solely* to ensure a just and right division, the court also acknowledged that a lien may be imposed on separate real property if its purpose is to secure reimbursement rights. *Id.* In the present case, the trial court imposed the equitable lien on the Collins Road property for the specific purpose of securing Marian's right to recover from Curtis's separate-property estate the amount the

secure a contribution claim even if the property originally contributed to has been disposed of by the other party.

court awarded her for economic contribution. The final order recites: "It is ordered and decreed that an equitable lien *to secure this judgment claim for economic contribution* is imposed in favor of Marian D. Delancey against [the Collins Road property] which was put in a revocable trust named the Curtis Delancey Family Trust by [Curtis]." (Emphasis added.) Although *Heggen* dealt with liens securing claims for economic reimbursement rather than economic contribution, the principle is the same. Thus, *Heggen* actually supports the trial court's imposition of an equitable lien here because its purpose was not solely to ensure a just and right division but to secure an economic-contribution claim. *Id.* at 146.

Third, Curtis asserts that the trial court was prohibited by the Texas Constitution from imposing a lien on the Collins Road property because it is his homestead. *See* Tex. Const. art. 16, § 50. Section 50 provides:

> The homestead of a family or a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts *except for the purchase money thereof, or a part of such purchase money*, the taxed due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses . . . .

*Id.* (emphasis added). Curtis and Marian join issue on whether the equitable lien secures a debt "for the purchase money" of the Collins Road property. The trial court expressly found that the funds from the sale of the General Aviation property, $326,294 of which constituted community contribution, were used to purchase the Collins Road property. There is sufficient evidence in the record to support this finding. In fact, Curtis himself testified at the original trial that he used $325,000 of the proceeds from the sale of the General Aviation property to purchase the

Collins Road property.[5]  During his testimony in the remanded case, he again agreed that he used $325,000 of the sale proceeds to purchase the Collins Road property.

Marian's claim for economic contribution arose when the parties used community funds to pay the debt for Curtis's separate property.  *See* Act of May 18, 2001, 77th Leg., R.S., ch. 838, § 2, 2001 Tex. Gen. Laws 1679, 1680, *amended by* Act of May 29, 2009, 81st Leg., R.S., ch. 768, § 3, 2009 Tex. Gen. Laws 1950, 1951.  A claim for economic contribution creates a claim against the property of the benefitted estate that matures upon termination of the marriage.  *See Langston v. Langston*, 82 S.W.3d 686, 689 (Tex. App.—Eastland 2002, no pet.).  Thus, Marian had a claim to receive $163,147 first from the General Aviation property, then from the proceeds of the sale of that property, and finally from the property purchased with those proceeds.  The equitable lien, therefore, secured a claim to a portion of the money used to purchase the Collins Road property.  That the claim matured after the property was purchased does not alter the fact that Marian had a claim to a portion of the purchase money.  As such, the equitable lien is one that secures a debt "for the purchase money" of the Collins Road property and therefore is not prohibited by the Texas Constitution.  We overrule Curtis's first appellate issue.

In his second issue, Curtis asserts that "the lien clearly is not a purchase-money lien, as there is no evidence in the record supporting any purchase transaction of [his] separate property."

---

[5]  Curtis's testimony in this regard was given during a June 29, 2009, hearing.  While that hearing was part of the proceedings that took place before the cause was appealed to this Court the first time, on remand the trial court expressly took judicial notice of all the evidence and testimony from previous hearings.  The trial court also made a finding in the first proceeding that the proceeds of the General Aviation property were used to buy the Collins Road property.  Curtis did not challenge this finding in his appeal from the first decree of divorce.

Curtis cites no authority for this statement, and his entire argument under this issue consists of three sentences. Because he has failed to adequately brief this issue, it is waived. Tex. R. App. P. 38.1 (brief must contain clear and concise argument for contentions made with appropriate citations to authorities and to record). In any event, as set forth above, the record contains ample evidence that the Collins Road property was purchased using money from the sale of the General Aviation property. We overrule Curtis's second issue.

In his third issue, Curtis complains that trial court erred in ordering him to sign a note and deed of trust securing the $163,147 judgment in Marian's favor both individually and as Trustee of the Curtis Delancey Family Trust. Again citing no authorities and with scant argument, Curtis argues that making the trust an obligor to Marian is not supported by the evidence. The evidence at trial revealed that shortly before selling the General Aviation property, Curtis transferred it to the trust, purportedly to protect it from creditors. There was also evidence that Curtis's only asset is the Collins Road property, which is owned by the trust. The trust is a revocable trust with Curtis as both the trustee and the primary beneficiary. Curtis also claimed at trial that the property held by the trust was in fact *his* separate property and *his* homestead, indicating that he makes no distinction between himself and the trust.[6] Because the trust is the named owner of the only property available to secure Marian's money judgment, and in the absence of any argument or authority supporting Curtis's

---

[6] We also note that during proceedings associated with the second bench trial, the trial judge commented that, "I think this whole trust thing is a scam, by the way, [] to try to secret the property away from his ex-wife," and observed that Delancey "was the beneficiary and the trustee and the originator of the trust, and testified in front of me that he was not a beneficiary, when, in fact, he was."

assertion that it should not be an obligor, we hold that the trial court's decision to order the trust to sign the note was sufficiently supported by the evidence. We overrule Curtis's third appellate issue.

The trial court also ordered Curtis, individually and as trustee of the Curtis Delancey Family Trust, to execute a deed of trust that permits Marian to foreclose on the Collins Road property in the event Curtis defaults on the $163,147 note to Marian. In his fourth issue, Curtis asserts that because it was improper to impose a lien on the Collins Road property at all, it "follows that it is improper to require [him], individually or as Trustee of the Curtis Delancey Trust, to execute a deed of trust" on that property. Because we have concluded that the imposition of the equitable lien was proper, this argument fails. We overrule the fourth issue.

In his fifth issue, Curtis states that the trial court erred by including the Collins Road property in its division of the "estate of the parties" pursuant to section 7.001 of the family code. Relying on *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137 (Tex. 1977), Curtis maintains that the "estate of the parties" means only community property. Curtis quotes two portions of the divorce decree: (1) a recitation that "this decree is a partition of the community property of the parties," and (2) a recitation that "the property described above [the Collins Road property] is part of this partition order." Curtis argues that these recitations mean that the trial court "included separate property as part of the community property of the parties." It is clear, however, that the divorce decree does not purport to divide the Collins Road property, or any other separate property of either Curtis or Marian. Rather, the trial court expressly found that the Collins Road property was Curtis's separate property, and the decree does not purport to dispose of or divide this property. The decree simply imposes an

10

equitable lien on that property to secure Marian's claim for economic contribution.  We overrule Curtis's fifth issue.

## CONCLUSION

Having overruled Curtis's appellate issues, we affirm the trial court's order of divorce.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   January 11, 2013

11