FILED IN
1ST COURT OF APPEALS
HOUSTON, TEXAS

OCT 05 2015

CHRISTOPHER A. PRINE

CLERK _____

**In The**
# Court of Appeals
**For The**
# First District of Texas

---

## NO. 01-015-00063-CV

---

**Patrick Cox, Appellant(s)**

**V.**

**Cara Cox, Appellee(s)**

---

## On Appeal from the 245th District Court
## Harris County, Texas
## Trial Court Cause No. 2013-21966

---

## APPELLANT'S ORIGINAL BRIEF

Patrick Cox
Pro Se Appellant
247 Hedwig Rd
832-495-9416
855-280-1504
divorce_cara@yahoo.com

# IDENTITIES OF PARTIES AND COUNSEL

The following is a complete list of the names of all parties to the trial court's final decree and their trial and appellate counsel.

**Appellant/Respondent:**                    Patrick Cox

**Appellate Counsel for Patrick Cox:**       Pro Se

**Trial Counsel for Patrick Cox:**           Michael Delaney
                                             929 Preston, Suite 200
                                             Houston, Texas 77002
                                             PH: 713-222-2767

**Appellee/Petitioner:**                     Cara Cox

**Appellate Counsel for Cara Cox:**          Allan Daughtry
                                             One Houston Center
                                             1221 McKinney St.
                                             Suite 4100
                                             Houston, Texas 77010
                                             Office: (713) 554-9097

**Trial Counsel for Cara Cox:**              Bobby K. Newman
                                             3355 W. Alabama, Ste 444
                                             Houston, Texas 77098
                                             PH: 713-966-4444

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL .................... 2

INDEX OF AUTHORITIES .................... 4

STATEMENT REGARDING ORAL ARGUMENT .................... 5

STATEMENT OF ISSUES PRESENTED .................... 6

STATEMENT OF THE CASE .................... 8

STATEMENT OF JURISDICTION .................... 9

ARGUMENTS AND AUTHORITIES

    OPENING STATEMENT .................... 10

    MARITAL HISTORY .................... 10

    SUMMARY OF BRIEF .................... 12

    PRE TRIAL AND TRIAL MOTION ERRORS .................... 16

    OWELTY OF PARTITION DEED/LIEN .................... 23

    APPELLANT DUE AN OWELTY OF
        PARTITION AS TO APPELLEE'S
        SEPARATE PROPERTY .................... 34

    CONCLUSION AND RELIEF SOUGHT .................... 34

    PRAYER .................... 36

CERTIFICATE OF COMPLIANCE .................... 37

CERTIFICATE OF SERVICE .................... 38

APPENDIX .................... 39

# INDEX OF AUTHORITIES

## TEXAS CONSTITUTION

ARTICLE XVI, SECTION 50(c) ...................... 24

ARTICLE XVI, SECTION 15 ...................... 24

ARTICLE XVI, SECTION 50(a)(3) ...................... 32

## CASES

Wackenhut Corporation v. Jesse James
    Gutierrez (Texas Supreme Court
    Feb 6, 2015, Docket No 12-0136) ......... 18

Eggemeyer v. Eggemeyer, 554 S.W.2d 137,
    140 (Tex.1977) ......... 23

Leighton v. Leighton, 921 S.W.2d 365, 368
    (Tex. App.-Houston [1st Dist.] 1996,
    no writ ......... 23

Smith v. Smith, 22 S.W.3d 140
    (Tex. App. 2000) ......... 23

## OTHER AUTHORITIES

Texas Rules of Evidence ...................... 21

Texas Rules of Evidence, Article X,
    Rule 1007 ...................... 22

# STATEMENT REGARDING ORAL ARGUMENT

Both parties are willing to present oral argument in this case if the Court believes it will derive substantial benefit from the presentation of oral argument in this case.

Appellant has no objection to proceeding without oral arguments should the Court determine it is not likely to derive substantial benefit from the presentation of oral argument.

# STATEMENT OF ISSUES PRESENTED

The Trial Court made both procedural errors and errors in its evaluation of the evidence resulting in errors in the decisions rendered in this case.

Issue 1: The Trial Court made errors in trial motion rulings tied to pretrial prejudices resulting in bias in its treatment of the Appellant.

Issue 2: The Trial Court improperly overruled admission of Appellant's revised inventory.

Issue 3: The Trial Court failed to properly evaluate the evidence admitted in the case, and due to this error, the amount awarded in settlement of the community estate's potential claim against the separate property homestead of the Appellant was in excess of any reasonable evaluation of the evidence resulting in an award of money that is not supported by the evidence in the case and exceeds the amount of the community estate's rightful claim against the Appellant's separate property homestead. The Trial Court then awarded an owelty of partition deed/lien to Appellee that ignores the evidence admitted in the case by the Trial Court. This resulted in an owelty of partition of the Appellant's separate property homestead in violation of the Texas Constitution.

Issue 4: These errors resulted in a violation of the Appellant's rights under the Texas Constitution.

Issue 5: The Trial Court failed to award the Appellant an owelty of

partition in the Appellee's separate property investment real property deriving from the community estate's claim to the earnings of the property during the marriage.

# STATEMENT OF THE CASE

Appellant acting pro se comes before this Honorable Court and submits this Appellant's Original Brief. The 245th District Court is the Trial Court in this matter.

The Trial Court made both procedural errors and errors in its evaluation of the evidence resulting in errors in the decisions rendered in this case.

Appellant asks this Court to correct those errors in the case rather than remand the case for retrial since the error is easily corrected based on the evidence admitted in the case.

The Appellant is seeking, as relief from the Trial Court's actions, the elimination of the owelty of partition deed/lien awarded to Appellee and the reduction of the money amount to zero from $135,000.

The also Trial Court ignored evidence that was clear in showing a community estate claim against the Appellee's separate property and as a result failed to award the Appellant an owelty of partition in the Appellee's separate property investment real property deriving from the community estate's claim to the earnings of the property during the marriage.

Absent a correction of the error, Appellant asks that the case be remanded for re-trial with appropriate instruction to the Trial Court.

# STATEMENT OF JURISDICTION

This is an appeal by Patrick Cox ("Cox"), a respondent in a civil case. The 245th District Court had jurisdiction of the case on the merits.

Notice of appeal was timely filed on January 13, 2015 in accordance with Rule 25.1(a) of the Texas Rules of Appellate Procedure.

Th First Circuit Court of Appeals of Texas has jurisdiction pursuant to Texas Rules of Appellate Procedure 25.1(b).

# ARGUMENTS AND AUTHORITIES

## OPENING STATEMENT

Appellant acting pro se comes before this Honorable Court and submits this Appellant's Original Brief.

The 245th District Court is the Trial Court in this matter. The Appellant will demonstrate that the Trial Court made both procedural errors and errors in its evaluation of the evidence resulting in errors in the decisions rendered in this case. Based on the trial record and for the reasons described in this brief, this Court has ample reason to reverse and fix the decision of the Trial Court. Appellant asks this Court to correct those errors in the case rather than remand the case for retrial since the error is easily corrected based on the evidence admitted in the case.

## MARITAL HISTORY

The parties were married on July 10, 2010 and separated on February 11, 2013. After reconciliation was not possible, Appellee filed for divorce in March 2013 and served Appellant in April 2013. Appellant answered and agreed that the parties suffered irreconcilable differences and should be legally divorced. The 245th District Court was the Trial Court

and heard the case on September 4, 2014 and rendered its Final Decree of Divorce on December 23, 2014. The appeal to this Court concerns the property distribution awarded to the Appellee by the Trial Court.

Appellant earned a large income prior to marriage but due to a reversal of fortunes at Appellant's business, Appellant did not earn a sufficient income during the term of the marriage to support the family formed from the marriage. The blended family consisted of Appellee and Appellee's son from prior marriage and Appellant's adopted son lived in the Appellant's separate property homestead during the entire term of the marriage until the parties separated. Appellee did not work during the term of the marriage. Appellee had her separate property residence and less than $5,000 combined in retirement and less than $1,000 in non-retirement accounts at the time of the marriage so contributed no money to the household during the marriage. (See Exhibit CC-2.1 and CC-3.) Because of Appellant's insufficient income and Appellee's nonexistent income during the marriage, Appellant withdrew funds from Appellant's separate property accounts to pay Appellant's mortgage and provide for household needs that the community property income was unable to provide. (See Exhibit CC-2.1 and CC-2.2 and Reporter's Record page 127, lines 10 to 13.)

# SUMMARY OF APPELLANT'S APPEAL BRIEF

In summary, the Appellant's brief consists of two parts. First, the Trial Court erred in its pre-trial and trial day motion decisions and actions leading to prejudicial behavior by the Trial Court against the Appellant and failure to admit evidence that should have been admitted. Second the Trial Court erred in its evaluation and application of the evidence admitted in the case resulting in an award to the Appellee far in excess of Appellee's share of any community property claim.

If the Trial Court had not made the pre-trial and trial day motion errors resulting in this prejudicial behavior and evidence exclusion, the Appellant's trial counsel would have been permitted to both introduce significant evidence in the case and to challenge the veracity and integrity of the Appellee's inventory and proposed property settlement. These challenges and examinations of the Appellee's information by Appellant's trial counsel would likely have resulted in a completely different outcome in the Trial Court's decision. If Appellee were to argue that it would have had no impact then Appellee must explain why Appellee objected to the information since a rational person does not argue to exclude evidence that is helpful to his or her case. Appellant acknowledges that this appeal requires the presentation of sufficient information from the Court Reporter's Record and

Clerk's Record to support the claims made. That information is in the record.

As this Court reviews the contents of this brief, Appellant believes it will be clear that sufficient information was presented to the Trial Court that had it given reasonable consideration and attention to such information, it had sufficient information available to it to admit the rejected inventory and proposed settlement provided by the Appellant and no owelty of partition deed or lien would have been awarded to Appellee for the amount awarded by the Trial Court.

Second and certainly not least, the Trial Court erred in its application of Texas Law and the Texas Constitution as concerns the money awarded and the security of it by the owelty of partition deed. These errors, when corrected, will reduce to zero the Appellee's monetary award and eliminate the need for an owelty of partition deed that was granted in error by the Trial Court to the Appellee in the amount of the monetary award.

After trial on September 4, 2014, the Trial Court rendered its decision on December 23, 2014 awarding money ($135,000.00) to the Appellee in satisfaction of Appellee's claims against the community estate. The Trial Court ordered that the money award was to be secured by an owelty of partition lien/deed. Additionally, the Trial Court confirmed the separate property nature of Appellee's and Appellant's separate property. All

separate property consisted of assets held by each party before marriage. Neither party received any property during the marriage that would be classified as separate property. The parties did not acquire any property during the marriage the constituted community property.

The Trial Court failed to award Appellant an owelty of partition in the separate real estate investment property of Appellee after reviewing the evidence. The evidence admitted clearly supports this award and this court should correct the error of the Trial Court.

The Appellant's use of separate property account funds to pay the mortgage resulted in the creation of no community property estate as concerns the Appellant's separate property homestead (acquired prior to marriage and confirmed by the Trial Court as Appellant's separate property). Since the Trial Court awarded $135,000 that was to be secured by an owelty of partition deed/lien and since the Trial Court stated its familiarity with the requirements of the homestead protection afforded Texas residents and familiarity with the law concerning the owelty of partition deed/lien, it is reasonable to conclude that the evidence must support this money award from the community property interest in the Appellant's separate property homestead or the money award must be reduced to the amount that can be supported by the evidence.

We do not know the Trial Court's findings of fact and conclusions of

law due to an error by the trial attorney for the Appellant who failed to timely request this information from the Trial Court. However, we do know the laws and the constitution of the State of Texas. We also do have the Trial Court's own declarations of competence and specialized knowledge in the matter to rely that this matter was certainly considered in the process. If the Trial Court was fully aware of the law and constitutional limitations in this area, any error in the amount awarded must necessarily be an error in evaluation of the evidence. As the evidence was quite substantial and technical and as the Trial Court did not have the assistance of testimony of tax accountant's representing the Appellee and as we do have the testimony of the Appellant who is an acknowledged expert in income tax and financial matters as testified and not disputed by Appellee, it is not unreasonable to believe that the Trial Court did the best it could to evaluate the evidence and render its decision even if that decision was in error.

While the Appellant acknowledges that the Trial Court does and should have wide discretion in its findings in family law matters, that discretion does not extend to ignoring the laws, the evidence, or the constitution of the State of Texas in reaching its decisions. In this case, the Trial Court did fail to properly interpret evidence and did make errors in its decisions and in its application of Texas Law and the Texas Constitution which should be corrected by this Court so that the laws of Texas remain

reliable and predictable to all parties in the State of Texas. Failure to address the errors made could very well result in significant disruption of the business and family law environment in the State of Texas.

Due to the error in the money amount awarded to Appellee as an owelty of partition deed/lien, Appellant appealed the decision of the Trial Court and is specifically seeking revision of the amount of the monetary award based on the evidence admitted at trial. Appellant believes the most expedient method of resolving this error is a correction in the amount awarded to Appellee at trial to an amount supported by the evidence admitted in the case.

## PRE TRIAL & TRIAL MOTION ERRORS

Two pre-trial events led the Trial Court to reject the modified inventory and proposed property distribution submitted by the Appellant.

The first error occurred during the pre-trial phases of this case. The errors led to a prejudicial environment towards the Appellant. This error evolved from a dispute as to the completeness of the responses to discovery provided to the Appellee by the Appellant. Appellant was late in supplying the discovery responses to Appellee. As a result, Appellee filed a motion to compel the responses and sought sanctions. Before the date of the motion hearing, Appellant was able to complete and submit to Appellee

a complete response to the discovery. Appellant then contacted Appellee's counsel to confirm the hearing would be passed. Appellee's counsel did not respond.

The hearing was held as scheduled and Appellant was never advised that the hearing was going forward. Although this may be considered unprofessional on the part of Appellee's counsel to not respond, the clerk for the Trial Court had contact information for Appellant but failed to make any effort to reach Appellant. Based on prior actions of the Trial Court, the Appellant could have reasonably expected the courtesy of a phone call from the Trial Court informing him that the hearing would proceed and he would need to appear that morning. As cited in Appellant's motion for reconsideration of sanctions filed with the Trial Court in January 2014 (see argument points 8 and 9), the Trial Court routinely called the Appellee's trial counsel when he failed to appear at the court for a pretrial motion hearing. This is not required of the Trial Court clerk, but the Trial Court had established by precedent of its prior actions that its standard mode of operation was to contact or make several attempts to contact missing parties of scheduled hearings to confirm their intent to attend or not attend the scheduled hearing.

The Trial Court did not extend the same courtesy to the then pro se Appellant as had previously been extended to Appellee's counsel and other

parties appearing before the Trial Court on dates when Appellant was present for hearings. When Appellee's trial counsel failed to appear at a scheduled hearing during earlier pretrial motions, the Trial Court made several efforts to contact him to inform him that his presence was needed to proceed with hearings. Appellant was advised that the Appellee's trial counsel could not be reached and the matter would be re-scheduled. Based on this history and based on Appellant's observation on other days when hearings took place in this and other matters in the 245th District Court, it was clearly routine for the Trial Court to instruct the court clerk to attempt to contact missing counsel and to delay hearings until the party was reached when someone was absent. The Appellant was acting reasonably by expecting the same courtesy of the court clerk as was extended to others. This courtesy was extended to Appellee's counsel, but not to a pro se Appellant in the same case. The result was a decision in a hearing that became a matter of disagreement in the case that was used by Appellee's trial counsel at every opportunity to insert it into the arguments and discussion in a clear attempt to prejudice the Trial Court against the Appellant. It seems that it worked.

After this series of events, Appellee's trial counsel would routinely evoke the reminder to the court of this finding in December 2013 and use this to give the Trial Court reason to treat Appellant in a prejudicial manner.

At each hearing and request for extension, the subject of inadequate discovery was worked into the discussion. Yet, at no point did the Appellee's counsel, from receipt of the discovery in December 2013 to the final motion to reset the trial date, file a motion to compel discovery citing any specific deficiencies. It seems contrived to create a prejudicial environment.

At Appellee's final request for a reset trial date, he was even given the approval from the Trial Court judge to request on an emergency basis any motion to compel specific discovery responses that the Appellee's counsel determined was missing. Appellee's trial counsel was promised emergency consideration by the Trial Court of any such motion. During the succeeding sixty plus days, this Court might be surprised to learn that Appellee's counsel did not file a single motion to compel discovery. After month's of haranguing the Appellant over the "inadequate" discovery response, Appellee's trial counsel found it necessary or even potentially helpful to file not one single motion to compel on any item of discovery he previously claimed was inadequate. It is reasonable to conclude that entire production concerning the discovery was little more than a ruse to distract the Trial Court and prejudice it against the Appellant. It clearly worked.

At the time of trial during motions, the Trial Court's previous ruling on discovery was repeatedly evoked by Appellee's trial counsel at trial and the

Trial Court reminded of its finding as proof of continuing failure of Appellant to comply with the Trial Court. This all was used to demonstrate support of Appellee's trial counsel's motion to exclude the Appellant's revised inventory from consideration by the Trial Court. (See Reporter's Record, Page 15, line 14 to Page 17, line 19.)

Besides the prejudicial environment, the Trial Court erred in ignoring the substantial information in Appellant's pre-trial motions including a motion for "Partial Summary Judgment as to Respondent's Marital Estate" where Appellant provided the Court and Appellee's trial counsel with an inventory of his assets and their value. Appellant provided an inventory to the Trial Court and to the Appellee among other pertinent information. In Appellant's motions, he provided the Trial Court with substantial information he deemed relevant and about which he wished to inform the Trial Court. the Trial Court ignored this information in overruling Appellant's request to admit his inventory and permit him to challenge the inventory of the Appellee. The Texas Supreme Court ruled earlier in 2015 that pre-trial motions need not be re-submitted to the Trial Court during trial in order to preserve error and for a party to avail itself of having satisfied an obligation to provide the court with information it requires in a timely manner (See Wackenhut Corporation v. Jesse James Gutierrez, Feb 6, 2015, Docket No 12-0136).

To further compound the error, the Trial Court was given another opportunity to redress this error. During testimony, the Trial Court observed that the Appellee's inventory cited the Appellant's inventory as the source for one of Appellee's inventory items. (See Reporter's Record, Page 133, Line 5 to Line 15.)

The Trial Court observed that, if the Appellee received no inventory information from Appellant, her trial counsel would not have referenced that information in Appellee's inventory that the Trial Court admitted. The Trial Court briefly pointed this out to Appellee's trial counsel and made a brief perfunctory inquiry that was inadequate to determine the source of the information and failed to take notice of the pre-trial motions that cited the data used by Appellee.

To compound this error, Appellee's trial counsel responded that the information came from another inventory source not prepared by Appellant for purposes of this case. (See RR, Page 133, Line 10 to Line 13.) The Trial Court accepted this but did not reverse the decision rejecting Appellant's inventory. An innovatory prepared for another civil case in another court cannot be deemed invalid under the Texas Rules of Evidence under any rule or case law that the Appellant can find.

The Trial Court erred by failing to conduct reasonable due diligence at any minimal level when presented with inconsistent information and make

reasonable inquiries as to the actual source of the information. Further upon being advised that the Appellee was relying on another inventory type of document in the case and was presenting excerpts from that evidence at trial, the Trial Court failed to reverse itself or demand production of that document in its entirety to determine if that document was an inventory and met the requirements for Appellant to provide an inventory.

There were many options available to the Trial Court to resolve the inconsistency between being told no inventory existed only later to discover an inventory being referenced and information constituting a de-facto inventory from a pre-trial motion being used by the Appellee. Appellant was unable to afford representation in the early stages of this case due to his financial position. Because of this, Appellant's own trial counsel was engaged on the case only a couple of months before trial and could not answer the Trial Court as to the potential source in the time allotted. Had the Trial Court granted sufficient time to inquire, demanded production of the document used by Appellee, or made its own inquiries into the matter, it would have determined the source of the information and overruled the Appellee's objection to admission of Appellant's inventory. The Trial Court is permitted under Texas Rules of Evidence, Article X, Rule 1007 to "prove the content of a writing, recording, or photograph by the testimony, deposition, or written statement of the party against whom the evidence is

offered. The proponent need not account for the original."

In one case, the Trial Court took no action to correct the prejudicial treatment it rendered. In the second event, the Trial Court did briefly and perfunctorily but inadequately inquire into the inconsistencies in the evidence it was presented by Appellee which lead to an error in decision on admitting the evidence. These two errors led to Appellant not receiving fair and just submission of evidence in this case for the Trial Court to consider in rendering its decision and prejudiced handling of the case by the Trial Court that is sufficiently egregious enough to warrant action by this Court.

## OWELTY OF PARTITION DEED/LIEN

The Trial Court erred in its award of an owelty of partition and its associated money award to Appellee in the decree dissolving the marriage and partitioning the assets.

The decree grants to Appellee an owelty of partition deed/lien in the amount of $135,000. The owelty of partition deed is granted against the Appellant's separate property homestead. This amount was not supported by the evidence admitted in the case and should be reduced to the amount supported by the evidence by this Court.

The error made has the effect of mischaracterizing separate property

as community property and thereby denying Appellant his separate property. When a court mischaracterizes separate property in this way, the error requires correction or reversal. (See Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 140 (Tex.1977); Leighton v. Leighton, 921 S.W.2d 365, 368 (Tex. App.-Houston [1st Dist.] 1996, no writ; and Smith v. Smith, 22 S.W.3d 140 (Tex. App. 2000)). If the award against the Appellant's separate property homestead cannot be tied by the evidence to a valid claim allowing for an owelty of partition, then the award and the owelty of partition against Appellant's separate property homestead are invalid (Texas Constitution, Article XVI Section 50(c) ).

The real property against which the owelty of partition deed/lien was granted to Appellee is Appellant's separate property and is his homestead. Both its character as Appellant's separate property and its character as his homestead were confirmed by the Trial Court. Appellant acquired the homestead many years prior to meeting and marrying the Appellee. As the admitted evidence at trial proved, at no time was the homestead mortgage re-financed to add the Appellee and at no time was the title modified to reflect any form of ownership by the Appellee based on the evidence admitted at trial. The real property is Appellant's separate property homestead and this was undisputed by the Appellee at trial. The Texas Constitution under Article XVI, Section 15 requires a written agreement

between the parties in order to partition the Appellant's separate property.

In order to determine that the Appellee is entitled to an owelty of partition deed/lien dollar amount, the Trial Court must determine the following or the owelty of partition deed/lien is invalid. (Texas Constitution, Article XVI Section 50(c) )

1.     The community estate has a potential reimbursement claim against the Appellant's separate property homestead claim;

2.     The community estate must have had sufficient earnings to pay household expenses first and then provide funds to expend on the Appellant's separate property homestead;

3.     The community estate funds may have been expended on the Appellant's separate property homestead in a manner that creates a valid reimbursement claim to the community estate;

4.     Since the Trial Court found neither party to have been at greater fault in the dissolution of the marriage, the amount awarded to Appellee must be fifty percent of the community estate's contribution to the Appellant's separate property homestead, or as a corollary, the community estate contribution must be twice the amount awarded to Appellee;

5.     The Trial Court cannot award Appellee an owelty of partition deed or lien against Appellant's separate property homestead for any amount not directly from the community estate's claim against the

Appellant's separate property homestead since any award that derives from any claim other than a community reimbursement claim against Appellant's separate property homestead is invalid (Tex Const, Art XVI Sec 50(c) and Sec 50(a)(3)).

At any step in this logical process where the answer to the question is negative or the information fails to support the decision of the Trial Court, the Trial Court should have decided that no owelty of partition is due or can be made so no money award is due the Appellee from the Appellant's separate property homestead. If the Trial Court did or should have reached a stop at any step based on the court's record and the evidence admitted and failed to do so, the Trial Court made reversible error. This Court should address and correct that error if it can be shown that the Trial Court erred.

In analysis of step 1 above, the Trial Court must determine in its analysis of the evidence admitted that there is the potential for the community estate to have a reimbursement claim against the Appellant's separate property homestead before proceeding the step 2. Appellee's inventory and proposed property settlement claimed reimbursement from the community estate for payments of mortgage interest, mortgage loan principal, and property taxes such that a potential claim existed and required the Trial Court to determine what amount, if any, that could be assigned to an owelty of partition deed or lien against the Appellant's

separate property homestead.

In analysis of step 2 above, the Trial Court admitted into evidence the Appellee's inventory and proposed property settlement and improperly denied admission of the Appellant's inventory and proposed property settlement. The Trial Court also admitted personal income tax returns and associated other documents.

In reviewing the evidence, the testimony, tax return and other financial data admitted by the Trial Court at the request of Appellee demonstrates clearly that the community estate had earnings of $151,621 during the term of the marriage from 2011 and 2012 tax years (See Exhibit CC-2.1 and CC-2.2 and Reporter's Record page 127, lines 10 to 13.) This amount was insufficient to pay the income taxes on the earnings, charitable donations and other costs of operating the household that are demonstrated on the tax return as a minimum of $81,293 for charitable donations for 2011 (See Exhibit CC-2.2, Schedule A, line 16) and the amount of $12,400 per month (Reporter's Record lines 7 to 21) in normal living expenses for food, clothing, utilities and other normal and necessary expenses of the family. This calculation (monthly living expense of $12,200 per month times 24 months equals $297,600 plus the joint charitable donations of $81,293 for a total of $378,893 versus earnings of $151,621 and a prorata sum for 2012 for 6 of the 52 weeks (January to mid February

per RR Pg 127, lines 10 to 13) of $17,495 equals total income of $169,116 leaving a deficit of community expenses of $209,777 for 2011 and 2012) shows that there were no community funds available for payment of the mortgage payment or property taxes of the Appellant's separate property homestead when community expenses are first removed from community earnings before any remainder can be claimed by Appellee as advanced from the community estate to the Appellant for separate property uses.

In analysis of step 3 above, the Trial Court must determine that community estate funds have been expended on the Appellant's separate property homestead in a manner that creates a valid reimbursement claim to the community estate

A required part of this calculation, if step 2 had produced a community estate claim, requires first determining the amount of the principal reduction paid on the Appellant's mortgage from community property funds. Costs such as interest, maintenance, and property taxes are a community benefit used up by the community and not part of the community estate's claim as correctly determined by the Trial Court

Since the calculation in item 2 demonstrates that no community funds could have been used to benefit Appellant's separate property homestead, the Trial Court should stop here. No amount is due Appellee and owelty of partition deed/lien cannot be used and is not needed since Appellee is not

due an owelty of partition of the Appellant's separate property homestead. The entire amount should be found to be invalid and the owelty of partition deed/lien found to be invalid in accordance with the Texas Constitution if the owelty of partition does not derive from an allowed obligation as enumerated in the Texas Constitution.

In analysis of step 4 above, the Trial Court must determine the amount of the community estate claim due to expenditure of community estate funds to the benefit of the Appellant's separate property homestead. That claim of the community estate is then properly awarded the heightened security of the owelty of partition. The Trial Court should not have reached this step since the Trial Court should have determined in step 2 that no community earnings could have been used by Appellant in support of his community property homestead. However, the Trial Court did award an owelty of partition to Appellee. To offer a complete analysis of the error by the Trial Court, we should go forward with determining the amount of the total of the community estate's claim. However, since we do not have the Trial Court's findings of fact, we have to back into the number the Trial Court would have had to find in the admitted evidence as the full amount of the community estate's claim against the Appellant's separate property homestead. That logical process might be best described as follows:

(a) Since the Final Decree of Divorce awarded each party fifty

percent of the community estate;

(b) and since only the portion of the community estate's claim against the separate property homestead of Appellant can be considered valid as to the owelty of partition of Appellant's separate property homestead awarded to Appellee by the owelty of partition (Tex Const Art XVI, Sec 50(a)(3));

(d) then we can conclude that the Trial Court must have determined that the community estate claim was $270,000 or twice the owelty of partition amount awarded to Appellee of $135,000.

In other words, the wide latitude afforded the Trial Court in balancing the community property does not extend to crossing the Texas Constitution's boundary between homestead and non-homestead debt or claim satisfaction. The partitioned amount of the homestead must be a part of the whole of the homestead or must be derived from one of the allowed exceptions in the Texas Constitution in order to become a partitioned award secured by an owelty of partition deed or lien. If this is not supported by he evidence, the owelty of partition is not valid. If the owelty of partition is not valid, the amount of the award represents an error in evaluation of the evidence and must be reduced to the correct amount, if any, that is supported by the evidence.

Therefore, the Trial Court must have determined based on the

evidence that the full $270,000 was spent from community estate funds for reduction in mortgage principal or other permitted homestead expenditures on Appellant's separate property homestead in order to award fifty percent or $135,000 to Appellee. If the evidence does not support this award because there were insufficient community earnings to allow for this amount, the Court is obligated to render justice and reduce the money award to the amount that can be identified as fifty percent of the community estate funds used for Appellant's separate property homestead.

In reviewing the evidence as discussed in items 2 and 3 above, the tax return and other financial data admitted by the Trial Court at the request of Appellee demonstrates clearly that the community estate had earnings of far less than $270,000 and that, after household expenses, far less than $270,000 was available to be used by the Appellant for mortgage principal reduction. The actual mortgage principal reduction was $0 from community estate funds based on the analysis of items 2 and 3 above.

When reviewing the evidence, it is clear that the other costs of the household for property taxes, food, clothing, gifts to the Appellee and other items consumed all of the community earnings. This leaves no community income to expend on the Appellant's separate property homestead. If no community earnings were expended to the benefit of Appellant's separate property homestead, the community estate has no claim to the Appellant's

separate property homestead that can be subject to an owelty of partition.

The amount awarded by the Trial Court is $135,000 (one hundred thirty-five thousand dollars). The correct amount that should have been awarded based on the evidence presented is $0.

In analysis of step 5 above, the Trial Court is only permitted to use the owelty of partition lien/deed against the Appellant's separate property homestead when dividing community estate property of a family homestead as provided in the Texas Constitution (Texas Constitution, Article XVI, Section 50(a)(3)). The Texas Constitution further provides in Article XVI Section 50(c) that "no mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section, whether such mortgage, trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married".

The Texas Constitution is very clear that no deed or lien created on separate property homestead of the Appellant by the Trial Court can be valid if it derives from any source other than the division of the community estate's claims directly against the Appellant's separate property homestead or of the homestead of the Appellee and Appellant or of a source as described in the other sub parts of Section 50(a) of the Texas Constitution. The Trial Court judge was very clear that he understood that

the real property's character was that of Appellant's separate property homestead and no evidence was admitted purporting to claim that the homestead was a jointly owned homestead. The Trial Court correctly confirmed the separate property ownership of the Appellant on the property. The limitations on the use of the owelty of partition in the Texas Constitution are very clear. It is only reasonable to conclude that the Trial Court must have believed that any amount it awarded Appellee in this matter that is secured by the owelty of partition deed/lien originated in the community property claim against the separate property homestead of the Appellant.

The corollary to this logical process is that any amount not supported by the trial evidence is by default an error of the Trial Court's evaluation of the evidence and should be corrected by this Court.

Since the evidence admitted does not support the required conclusions and since the Texas Constitution is clear as to when valid claims develop and where the owelty of partition can be used and when the owelty of partition becomes invalid and since the Trial Court clearly understood the requirements of the law and the Texas Constitution, this Court should correct the error of the Trial Court, and in accordance with the Texas Constitution, invalidate the amount of owelty of partition and the owelty of partition deed/lien.

## Appellant Due an Amount of Owelty of Partition as to the Appellee's Separate Property

The Trial Court failed to award the Appellant an owelty of partition in the Appellee's separate property which consisted of an investment in real property deriving from the community estate's claim to the earnings of the property during the marriage.

The income tax return discussed above for 2011 (Exhibit CC-2.2) provides on Schedule E the amounts of rent collected and the offsetting deductions as well as the benefit to Appellee's separate property of the use of community estate funds. Rent income of $19,425. Rental Expenses of $4,838. Net income of $14,587. The net income produced by the property was used to provide a reduction in the obligations of Appellee on her separate property for mortgage interest of $14,661 and property taxes of $5,814 or a total benefit from community earnings in 2011 of $20,475. Per Exhibit CC-2.1, the tax year 2012 produced a benefit form the community estate to the Appellee of $19,130. The total for 2011 and 2012 tax years was $39,605. Fifty percent of that amount is $19,802.50

Appellant asks that the Court correct this error and award Appellant an owelty of partition for the amount of $19,802.50 due Appellant.

## CONCLUSION AND RELIEF SOUGHT

Appellant asks that this Court revise the amount of the cash awarded and secured by an owelty of partition deed/lien by the Trial Court to the amount properly due in accordance with the calculation determined by the proper application of the law, the consideration of the evidence admitted, and the Constitution of the State of Texas as presented in the Appellant's brief above. The Appellee's award should be $0 owelty of partition of Appellant's separate property homestead and the owelty of partition deed/lien in favor of Appellee on Appellant's separate property homestead invalidated. Finally, the Court should award Appellant an owelty of partition deed/lien in Appellee's separate property investment real estate.

If this Court should decide to reverse and remand for reconsideration of the amount based on this evidence or based on the error demonstrated in the Trial Court's actions, the Appellant asks that the Court grant such relief as it deems fair and just including that the Trial Court be ordered to reconsider and admit the evidence (specifically the Appellant's inventory and proposed division of property) that was denied admission so that the Appellant may seek to properly claim the funds due him from Appellee under the laws of the State of Texas.

# PRAYER

Appellant prays that this Court will order the relief sought by Appellant

in this appeal of the decision of the 245th District Court of Texas.

Respectfully Submitted by:

Patrick Cox
Pro Se Appellant
Mailing address: _____247 Hedwig Rd_____
Telephone number: ___832-495-9416___
Fax number: _____855-280-1504_____
e-mail address: __divorce_cara@yahoo.com__

# CERTIFICATE OF COMPLIANCE WITH WORD COUNT

Appellant acting pro se submits this Appellant's Original Brief and certifies as required by Section 9.4(i)(3) of the TRAP that the brief complies with the word count limitations of Section 9.4(i)(2) based on the reported word count of the Appellant's word processing software used to prepare this brief.


_____
Patrick Cox
Pro Se Appellant

# CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on the following attorney of record by email in accordance with the Texas Rules of Appellate Procedure on October 5, 2015.

**email to:**
Alan Daughtry by email: alan@alandaughtrylaw.com
Attorney for Appellee

Patrick Cox
Pro Se Appellant

# APPENDIX

APPENDIX A:          DECREE OF DISSOLUTION OF MARRIAGE

CAUSE NO. 2013-21966

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT OF |
| THE MARRIAGE OF | § | |
| | § | |
| CARA COX | § | HARRIS COUNTY, TEXAS |
| AND | § | |
| PATRICK COX | § | 245th JUDICIAL DISTRICT |

FINAL DECREE OF DIVORCE

**FILED**
~~Chris Daniel~~
**District Clerk**

DEC 23 2014

Time:_____
Harris County, Texas

By_____
Deputy

**VS 165**

On ___9/4___, 2014 the Court heard this case.

### 1. *Appearances*

*Petitioner*, **CARA COX**, appeared in person and through attorney of record, Bobby K. Newman, and announced ready for trial.

*Respondent*, **PATRICK COX**, appeared in person and through attorney of record, **Michael Delaney**, and announced ready for trial.

### 2. *Record*

The record of testimony was duly reported by the official court reporter for the 245th Judicial District Court of Harris County, Texas. *R. HAMMONS*

### 3. *Jurisdiction and Domicile*

The Court finds that the pleadings of *Petitioner* are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

The Court further finds that, at the time this suit was filed, *Petitioner* had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

### 4. *Jury*

A jury was waived, and all questions of fact and of law were submitted to the Court.

Certified Document Number: 63623421 - Page 1 of 16

## 5. *Divorce*

**IT IS ORDERED AND DECREED** that **CARA COX**, *Petitioner*, and **PATRICK COX**, *Respondent*, are divorced and that the marriage between them is dissolved on the grounds of insupportability.

## 6. *Child of the Marriage*

The Court finds that there is no child born or adopted of the marriage of *Petitioner* and *Respondent* and that none is expected.

## 7. *Division of Marital Estate*

7.1   The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party.

### 7.2   Assets Awarded to CARA COX

**IT IS ORDERED AND DECREED** that **CARA COX** shall be and is hereby awarded the following as her sole and separate property, and **PATRICK COX** is divested of all right, title, interest, and claim in and to that property:

W-1.   All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of **CARA COX** or subject to her sole control;

W-2.   All clothing, personal belongings, jewelry, silver, china, and other personal effects in the possession of **CARA COX** or subject to her sole control;

W-3.   The funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

1.   100% of the Frost Bank, checking account no. xxx1497, held in the name of **CARA COX**;

2.   100% of the Frost Bank, savings account no. xxx2315, held in the name of **CARA COX**;

3.   100% of the Frost Bank, checking account no. xxx1003, held in the name of **CARA COX**;

4.   100% of the Frost Bank, savings account no. xxx7777, held in the name of **CARA COX**;

Certified Document Number: 63623421 - Page 2 of 16

**W-4.** The following retirement accounts, money market accounts, brokerage accounts, stocks, bonds, and securities, together with all dividends, splits, and other rights and privileges in connection with them:

    1.    **100%** of the Frost Bank Rollover IRA, account no. xxx3605, held in the name of **CARA COX**;

**W-5.** All policies of life insurance (including cash values) insuring the life of **CARA COX**, including but not limited to the following:

    1.    100% of the Guardian Group Term Life and AD&D Policies, insuring the life of **CARA COX**, including the $30,000.00 policy and the $150,000.00 policy.

**W-6.** The **2008 Toyota Highlander** motor vehicle, vehicle identification number JTEDS41A582024848, together with all prepaid insurance, keys, and title documents, currently in the possession of **CARA COX**.

**W-7.** All interest in the **Houstonian Membership** held in the name of **PATRICK COX**.

**W-8.** The sum of **$135,000.00** payable by **PATRICK COX** to **CARA COX**, pursuant to the additional provisions regarding such monies set out herein below.

### 7.3   Assets Awarded to PATRICK COX

**IT IS ORDERED AND DECREED** that PATRICK COX shall be and is hereby awarded the following as his sole and separate property, and **CARA COX** is divested of all right, title, interest, and claim in and to that property:

    **H-1.**    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of **PATRICK COX** or subject to his sole control;

    **H-2.**    All clothing, personal belongings, and other personal effects in the possession of **PATRICK COX** or subject to his sole control;

    **H-3.**    The funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

        1.    **100%** of the Prosperity Bank, account no. xxx2061, held in the name of **PATRICK COX**;

Certified Document Number: 6363421 - Page 3 of 16

2.    100% of the Allegiance Bank, account no. xxx5693, held in the name of **PATRICK COX**;

3.    100% of the Bank of America, account no. _____, held in the name of **PATRICK COX**;

4.    100% of the Greater Texas Federal Credit Union, account no. _____, held in the name of **PATRICK COX**;

5.    100% of the IBC Bank, checking account no. xxx4775, held in the name of **PATRICK COX**;

**H-4.**   The cash held by **PATRICK COX**'s family members (brother and/or mother) for his benefit, in the amount of **$100,000.00**, if and to the extent such cash exists;

**H-5.**   The following individual retirement accounts, money market accounts, brokerage accounts, investment accounts, stocks, bonds, and securities, together with all dividends, splits, and other rights and privileges in connection with them:

1.    100% of the JD Ameritrade Account, account no. xxx0378, held in the name of **PATRICK COX**;

2.    100% of the Janus Account, account no. xxx1864, held in the name of **PATRICK COX**;

3.    100% of the TD Ameritrade Account, account no. xxx0855, held in the name of **PATRICK COX**;

4.    100% of the Janus IRA Account, account no. xxx1865, held in the name of **PATRICK COX**; and

5.    100% of the Sterling Trust Rollover IRA Account, account no. xxx9285, held in the name of **PATRICK COX**.

**H-6.**   All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to **the following** profit-sharing plans, retirement plans, Keogh plans, pension plans, employee stock option plans, 401(k) plans, employee savings plans, or disability plans:

1.    100% of the Paychex 401(k) Account, account no. xxx2914, held in the name of **PATRICK COX**.

Certified Document Number: 63623421 - Page 4 of 16

Certified Document Number: 63623421 - Page 5 of 16

H-7.    All policies of life insurance (including cash values) insuring the life of **PATRICK COX.**

H-8.    The **2011 Ford Expedition** motor vehicle, vehicle identification number 1FMJK1J56BEF34684, together with all prepaid insurance, keys, and title documents, currently in the possession of **PATRICK COX.**

H-9.    The **2007 Ford Mustang** motor vehicle, vehicle identification number 12VHT82H975277350, together with all prepaid insurance, keys, and title documents, currently in the possession of **PATRICK COX.**

H-10.    All interest in the business known as **"Vpizza Restaurant"**, held in the name of **CARA COX**, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business, including the following specific accounts and property:

    1.    **100%** of the Frost Bank, account no. xxx5066, held in the name of **Vpizza Restaurant**, which account is currently frozen;

H-11.    All interest in the business known as **"CCLHR Enterprises, LLC"**, held in the name of **CARA COX**, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business, including the following specific accounts and property:

    1.    **100%** of the Frost Bank, account no. xxx4180, held in the name of **CCLHR Enterprises, LLC**, which account is currently frozen;

H-12.    Any and all interest in the business known as **"Osborne Company"**, should any such ownership interest exist in either of the parties, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

**H-13.** Any and all interest in the business known as **"Gozetti's Restaurant"**, should any such ownership interest exist in either of the parties, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

### 7.4 Debts and Liabilities to CARA COX

**IT IS ORDERED AND DECREED** that **CARA COX** shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold **PATRICK COX** and his property harmless from any failure to so discharge, these items:

**W-1.** All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to **CARA COX** in this decree unless express provision is made in this decree to the contrary.

**W-2.** All outstanding debts, charges, liabilities, and other obligations incurred solely by **CARA COX** except as specifically set out otherwise in this decree.

**W-3.** The following debts, charges, liabilities, and obligations:

1. **100%** of the debt owed on the Frost Bank Line of Credit, account number xxx9001, held in the name of **CARA COX**;

2. **100%** of the debt owed on the American Express Credit Card, account number xxxx3004, held in the name of **CARA COX**.

**W-4.** The personal loan held in the name of **CARA COX** and being payable to Robert Clement, incurred for the payment of attorney's fees and expenses in this matter.

**W-5.** All attorney's fees, costs, and expenses incurred solely by **CARA COX** related to this cause of action.

### 7.5 Debts and Liabilities to PATRICK COX

**IT IS ORDERED AND DECREED** that **PATRICK COX** shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold **CARA COX** and her property harmless from any failure to so discharge, these items:

Certified Document Number: 63623421 - Page 6 of 16

**H-1.** All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to **PATRICK COX** in this decree unless express provision is made in this decree to the contrary.

**H-2.** All outstanding debts, charges, liabilities, and other obligations incurred solely by **PATRICK COX** except as specifically set out otherwise in this decree.

**H-3.** The following debts, charges, liabilities, and obligations:

1. 100% of the debt owed to Chase Slate, account number xxx9805, held in the name of **PATRICK COX**;

2. 100% of the debt owed on the Diners Club International Credit Card, account number xxxx9840, held in the name of **PATRICK COX**;

3. 100% of all debts, penalties, interest and other liabilities related to the IRS Tax Notice dated February 17, 2014.

**H-4.** Any and all debts, liabilities and other obligations existing or arising out of the lawsuit instituted by the Receiver for **PATRICK COX** (Cause No. D-1-GN-13-002633, Kelly Crawford, as the Receiver for PATRICK R. COX and Team Advertising Services, Inc. v. CARA COX and CCLHR Enterprises, LLC) against **CARA COX**.

**H-5.** All attorney's fees, costs, and expenses incurred solely by **PATRICK COX** related to this cause of action.

**H-6.** All debts, charges, liabilities, and obligations related to the business known as **"Vpizza Restaurant"**.

**H-7.** All debts, charges, liabilities, and obligations related to the business known as **"CCLHR Enterprises, LLC"**.

**H-8.** All debts, charges, liabilities, and obligations related to the business known as **"Osborne Company"**.

**H-9.** All debts, charges, liabilities, and obligations related to the business known as **"Gozetti's Restaurant"**.

8.  *Notice*

**IT IS AGREED AND ORDERED** that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

### 9. *Judgment to Equalize Just and Right Division of Community Estate*



**9.1** For the purpose of effecting a just and right division of the community estate made in this decree, **IT IS FURTHER ORDERED AND DECREED** that *Petitioner*, **CARA COX**, is awarded judgment of **ONE HUNDRED THIRTY FIVE THOUSAND DOLLARS AND NO/100 ($135,000.00)** against *Respondent*, **PATRICK COX**, with interest at rate of ~~six percent~~ *5%* (~~6%~~) per year compounded annually from the date of judgment, for which let execution issue.

**9.2** This judgment is part of the division of community property between the parties rendered by the Court after hearing evidence submitted to the Court on a reimbursement and other claims brought by CARA COX on behalf of the community estate and shall not constitute or be interpreted to be any form of spousal support, alimony, or child support.

**9.3** **IT IS FURTHER ORDERED** that to accomplish a just and right division between the parties, this judgment shall be secured by an Owelty Lien against the real property located at **247 Hedwig Rd., Houston, Texas 77024.** *Respondent*, **PATRICK COX** is **ORDERED** to execute and sign an Owelty Lien ~~attached hereto as "Exhibit 1~~," and any other documents necessary to secure this Judgment with the property listed at 247 Hedwig Road, Houston, Texas 77024 prior to the date of entry of this order and to have same delivered to the offices of **Bobby K. Newman**, located at **3355 W. Alabama, Ste. 444, Houston, Texas 77098**, by ~~December 23, 2014~~ *December 31, 2014* at 5:00 p.m.

### 10. *Federal Income Tax Liability*

**10.1** **IT IS ORDERED** that all Federal Income Tax liabilities of the parties accruing during the marriage of the parties shall be paid pursuant to the Federal Tax Code.

**10.2** **IT IS ORDERED AND DECREED** that for the calendar year 2014, each party shall file an individual income tax return in accordance with the Internal Revenue Code.

**10.3** **IT IS ORDERED AND DECREED** that each party shall furnish such information to the other party as is requested to prepare federal income tax returns for **2014** within thirty days of receipt of a written request for the information, and in no event shall the available information be exchanged later than March 1, 2015. As requested information becomes available after that date, it shall be provided within ten days of receipt.

**10.4** **IT IS ORDERED AND DECREED** that each party shall preserve for a period of seven years from the date of divorce all financial records relating to the community estate. Each party is **ORDERED** to allow the other party access to these records to determine acquisition dates or tax basis or to respond to an IRS examination within five days of receipt of written notice from

Certified Document Number: 63623421 - Page 8 of 16

the other party. Access shall include the right to copy the records.

10.5    IT IS ORDERED AND DECREED that CARA COX is responsible for payment of her taxes on her income and that PATRICK COX is responsible for payment of his taxes on his income, except that PATRICK COX is 100% responsible for any and all tax debt related in any way to the Tax Notice awarded hereto as "Exhibit 2" dated December 13, 2014

## 11.    *No Alimony*

**IT IS ORDERED AND DECREED** that no provision of this decree shall be construed as alimony under the Internal Revenue Code, except as this decree expressly provides for payment of maintenance or alimony under the Internal Revenue Code.

## 12.    *Undivided Assets and Liabilities*

**12.1    IT IS ORDERED AND DECREED** that any assets of the parties not awarded or divided by this Final Decree of Divorce are subject to future division as provided in the Texas Family Code.

**12.2    IT IS FURTHER ORDERED AND DECREED**, as a part of the division of the community estate of the parties, that any community liability not expressly assumed by a party under this decree is to be paid by the party incurring the liability, and the party incurring the liability shall indemnify and hold the other party and his or her property harmless from any failure to so discharge the liability.

## 13.    *Confirmation of Separate Property*

**13.1**    The Court finds that certain described property is the separate property of each of the parties in this matter as provided herein below.

### 13.2    Separate Property of CARA COX

**IT IS ORDERED** that the following described property is confirmed as the separate property of *Petitioner*, **CARA COX**:

1.    The real property along with all improvements located at **5518 Schumacher Lane, Houston, Texas 77056**, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

More formally being described as follows:

**LOT 18, BLOCK 3, Larchmont Section 1, a subdivision in Harris County, Texas, according to the map records of Harris County, Texas.**

2. The following jewelry, clothing, and personal items:

   a. The black fur mink coat gifted to **CARA COX** by **PATRICK COX**;

   b. the gray fur mink coat gifted to **CARA COX** by **PATRICK COX**;

   c. One paid of Onyx & Rose gold earrings purchase by **CARA COX** with her separate property monies;

   d. One pair of champagne diamond earrings being gifted to **CARA COX**;

   e. The Vera Wang wedding dress gifted to **CARA COX** by **PATRICK COX**;

   f. The Chanel dress gifted to **CARA COX** by **PATRICK COX**;

   g. The diamond wedding band gifted to **CARA COX** by **PATRICK COX**; and

   h. The gold wedding band gifted to **CARA COX** by **PATRICK COX**.

**13.3  Separate Property of PATRICK COX**

**IT IS ORDERED** that the following described property is confirmed as the separate property and the separate property liabilities of *Respondent*, **PATRICK COX**:

1. Subject to the lien granted herein, the real property along with all improvements located at **247 Hedwig Road, Houston, Texas 77024**, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

   More formally being described as follows:

   **LOT 1,  Claymore Oaks. a subdivision in Harris County, Texas, according to the map records of Harris County, Texas.**

2. **Tax Master's Inc.**

Certified Document Number: 63623421 - Page 10 of 16

a. All interest in the **stock** of the business known as **"Tax Masters, Inc."**, held in the name of **PATRICK COX**, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

b. All debts, charges, liabilities, and obligations related to the business known as **"Tax Masters, Inc."**.

3. **Pawn Tax Enterprises, Ltd.**

a. All interest in the **stock** of the business known as **"Pawn Tax Enterprises, Ltd."**, held in the name of **PATRICK COX**, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

b. All debts, charges, liabilities, and obligations related to the business known as **"Pawn Tax Enterprises, Ltd."**.

4. **TMIRS Enterprises, Ltd.**

a. All interest in the **stock** of the business known as **"TMIRS Enterprises, Ltd."**, held in the name of **PATRICK COX**, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

b. All debts, charges, liabilities, and obligations related to the business known as **"TMIRS Enterprises, Ltd."**.

5. **PR Cox & Associates CPA PC**

a. All interest in the **stock** of the business known as **"PR Cox & Associates CPA PC"**, held in the name of **PATRICK COX**, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future,

Certified Document Number: 63623421 - Page 11 of 16

arising out of or in connection with the operation of the business.

b.      All debts, charges, liabilities, and obligations related to the business known as "**PR Cox & Associates CPA PC**".

6.      <u>**Team Advertising Services, LLC**</u>

a.      All interest in the **stock** of the business known as "**Team Advertising Services, LLC**", held in the name of **PATRICK COX**, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

b.      All debts, charges, liabilities, and obligations related to the business known as "**Team Advertising Services, LLC**".

c.      **100%** of the Prosperity Bank, account no. xxx5701, held in the name of Team Advertising Services, Inc. DBA Tax Masters Racing, as of May 31, 2012;

7.      <u>**AOC Ranches, LLC**</u>

a.      All interest in the **stock** of the business known as "**AOC Ranches, LLC**", held in the name of **PATRICK COX**, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

b.      All debts, charges, liabilities, and obligations related to the business known as "**AOC Ranches, LLC**".

8.      <u>**Trois Pilote Voiture, LLC**</u>

a.      All interest in the **stock** of the business known as "**Trois Pilote Voiture, LLC**", held in the name of **PATRICK COX**, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

Certified Document Number: 63623421 - Page 12 of 16

b.  All debts, charges, liabilities, and obligations related to the business known as "**Trois Pilote Voiture, LLC**".

c.  **100%** of the Prosperity Bank, account no. xxx7071, held in the name of Trois Pilote Voiture, LLC, as of May 31, 2012.

9.  The following additional debts, liabilities, and other obligations:

a.  All liabilities, judgments, debts, or other obligations in any way related to Tax Masters or Patrick Cox's other businesses or personal liability of any kind whatsoever arising from actions taken by Patrick Cox or any of his agents or employees (pursuant to Cause No. D-A-GV-000486; State if Texas v. TaxMasters, Inc., TMIRS Enterprises, LLC d/b/a TaxMasters and Patrick R. Cox; 200th Judicial District, Travis County, Texas);

b.  All Judgments granted against Patrick R. Cox or any business owned in whole or in part by Patrick R. Cox in favor of the State of Texas;

c.  All attorney's fees, expenses, appellate costs and other obligations related in any manner whatsoever to the claims asserted against Patrick R. Cox and those businesses owned in whole or in part by Patrick R. Cox in Cause No. D-A-GV-000486.

## *14.  Transfer and Delivery of Property*

14.1.  Each party will, within ten days of receiving written notice from the other party, execute and deliver to the other party any deeds, bills of sale, assignments, consents to change of beneficiaries of insurance policies, tax returns, and other documents and will do or cause to be done any other reasonable and necessary acts and things as may be necessary to effectuate the provisions and purposes of this agreement.  If either party fails to comply with this provision, that party will pay to the other all attorney's fees, costs, and other expenses reasonably and necessarily incurred as a result of that failure.

14.2  **PATRICK COX** is **ORDERED** to execute the following documents prior to entry of this order and to deliver such documents to *Petitioner* at the offices of **Bobby K. Newman,** located at **3355 W. Alabama, Ste. 444, Houston, Texas 77098:** *Bτ S̃: o ꝙ·ʄꞅ₁ oᶁ ℞ Decₑₙₕᵤ 3/, 2ₒ /ꝗ,*

1.  A "Power of Attorney to Transfer Motor Vehicle in favor of **CARA COX** on the **2008 Toyota Highlander** motor vehicle, vehicle identification number JTEDS41A582024848, being awarded to **CARA COX** herein above;

2.  An Owelty Lien related to the judgment of $135,000.00 being secured by

Certified Document Number: 6362342I - Page 13 of 16

the real property located at **247 Hedwig Rd., Houston, Texas 77024** in turn attached hereto as Exhibit ; ~~C~~ _(handwritten initials)_

3. All documents necessary to transfer ownership of the Houstonian Membership to Cara Cox in her sole name.

~~4. All documents necessary to foreclose on the property located at 247 Hedwig Road, Houston, Texas 77024 to satisfy the judgment secured by said property above, if it becomes necessary to do so.~~

**14.2** **CARA COX** is **ORDERED** to execute the following documents prior to entry of this order and to deliver such documents to *Respondent* at the offices of **Michael DeLaney**, located at **929 Preston, Suite 200, Houston, Texas 77002**:

1. A "Power of Attorney to Transfer Motor Vehicle in favor of **PATRICK COX** on the **2011 Ford Expedition** motor vehicle, vehicle identification number 1FMJK1J56BEF34684, being awarded to **PATRICK COX** herein above;

2. A "Power of Attorney to Transfer Motor Vehicle in favor of **PATRICK COX** on the **2007 Ford Mustang** motor vehicle, vehicle identification number 12VHT82H975277350, being awarded to **PATRICK COX** herein above;

## 15. _Muniment of Title_

This decree shall serve as a muniment of title to transfer ownership of all property awarded to any party in this Final Decree of Divorce.

## 16. _Change of Name_

**IT IS ORDERED AND DECREED** that *Petitioner's* name is changed from **CARA COX** to CARA ELIZABETH CLEMENT.

## 17. _Attorney's Fees_

To effect an equitable division of the estate of the parties and as a part of the division, **IT IS ORDERED** that each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

Certified Document Number: 63623421 - Page 14 of 16

## 18.  Court Costs

**IT IS ORDERED** that costs of court are to be borne by the party who incurred them.

## 19.  Resolution of Temporary Orders

**IT IS ORDERED** that *Petitioner* and *Respondent* are discharged from all further liabilities and obligations imposed by the temporary order of this Court rendered ~~on December 10, 2014~~. *In this case.*

## 20.  Discharge from Discovery Retention Requirement

**IT IS ORDERED AND DECREED** that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

## 21.  Clarifying Orders

Without affecting the finality of this *Final Decree of Divorce*, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

## 22.  Relief Not Granted

**IT IS ORDERED** that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

## 23.  Date of Judgment

SIGNED ON _____ DEC 2 3 2014 _____, 2014

_____
JUDGE PRESIDING

Certified Document Number: 63623421 - Page 15 of 16

**APPROVED AND ACKNOWLEDGED AS TO FORM:**

_____
CARA COX, *Petitioner*

_____
PATRICK COX, *Respondent*


**APPROVED AS TO FORM ONLY:**


**LILLY, NEWMAN & VAN NESS, L.L.P.**

_____
BOBBY R. NEWMAN
State Bar No. 00791347
3355 W. Alabama, Ste. 444
Houston, Texas 77098
Tel:   (713) 966-4444
Fax:   (713) 966-4466
Email:   bknservice@lnvlaw.com
**ATTORNEY FOR PETITIONER,
CARA COX**


**DELANEY LAW FIRM**

_____
MICHAEL DELANEY
State Bar No. 05724575
929 Preston, Suite 200
Houston, Texas 77002
Tel: (713) 222-2767
Fax: (713) 224-2889
Email: mpd1958@earthlink.net
**ATTORNEY FOR RESPONDENT,
PATRICK COX**

Certified Document Number: 63623421 - Page 16 of 16



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office this   December 23, 2014

Certified Document Number:        63623421

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**